### JONES & CAREY v. WARD RISLEY.

No. 345.—Decided December 2, 1895.*

91    1
90   616.

**1.  Contract—Construction.**

A sub-contractor agreed, with contractors for construction of mason work on bridge piers for a railway, for the performance of certain rock work according to the specifications of the latter's contract with the railway company and to the acceptance and satisfaction of its chief engineer.  By that contract courses were to be not less than twelve nor more than thirty inches in thickness, decreasing from bottom to top of walls, the kind and quality of materials subject to the approval of the company's engineer, and the work to be done in accordance with his directions.  This was an agreement between the contractors and sub-contractor that the engineer should determine the kind and quality of the stone to be used in the work and the thickness of the courses. (P. 4.)

**2.  Same—Antecedent Verbal Agreement.**

The effect of such contract could not be avoided by proof of an antecedent verbal agreement between the engineer, the contractors, and the sub-contractor, that the piers might be built of stone from a certain quarry and the courses be of the same thickness as those of a certain existing bridge. (P. 5.)

**3.  Same—Charge.**

It was error in such case to instruct that the original contract did not provide when the engineer should inspect and approve the material or determine the thickness of the courses, and that his designation, in anticipation of the sub-contract, at the request of the contracting parties, of a certain kind of stone and thickness of range as satisfactory gave the parties a right to contract with reference to such designation, and bound them by it, though nothing was said in their written contract with reference thereto. (Pp. 3 to 6.)

**4.  Same—Estoppel.**

The parties are conclusively presumed to have abandoned the verbal contract at the time they entered into the written one.  The rule prohibiting contradicting a subsequent written contract by a verbal agreement cannot be evaded by allowing such verbal agreement to be set up as an estoppel. (P. 5.)

**5.  Same—Cases Discussed.**

Jones & Carey v. Gilchrist, 88 Texas, 88, followed, and Ricker, Lee & Co. v. Collins, 81 Texas, 663, distinguished.

**6.  Contract—Consideration.**

On the refusal of the sub-contractor to proceed with the work except with the material and in the manner sanctioned by the engineer in the verbal agreement pre-

*NOTE.—This case was included by the former Reporter in the manuscript prepared for Vol. 88, Texas Reports, but being omitted therefrom, apparently by oversight of the printers, it has been thought proper to insert it in the present volume.

ceding the written contract, the agreement of the contractors to pay him extra compensation if he would proceed according to the engineer's directions, as by the written contract he was bound to do, was without consideration, and his completion of the work under such arrangement did not entitle the sub-contractor to such extra compensation. (P. 7.)

ERROR to Court of Civil Appeals, Second District, in an appeal from Tarrant County.

Risley sued Jones & Carey and had judgment which the Court of Civil Appeals affirmed on appeal by defendants, who then obtained writ of error. A companion case is that of Jones & Carey v. Gilchrist, 88 Texas, 88.

*Stanley, Spoonts & Meek,* for plaintiffs in error.

*Ball & Ball,* for defendants in error.

DENMAN, ASSOCIATE JUSTICE.—In October, 1886, the Gulf, Colorado & Santa Fe Railway Company and Jones & Carey entered into a written contract whereby Jones & Carey agreed to build the road of the company, including clearing, grubbing, grading, masonry, timber work, and track laying, in the Indian Territory, from Red River to the Canadian River; the work to be done according to the specifications attached, and "in conformity to the plans and directions and to the satisfaction and acceptance of the engineer of the railroad company." The contract fixed the prices of the various kinds of work, and provided for its payment on the monthly estimates of the engineer; and also provided, that the decision of any dispute growing out of the contract should be referred to a board of arbitration, whose action thereon should be final. The specifications attached to said contract, and made part thereof, were prepared for an extension of a line of railroad through an undeveloped country, and provided, under separate subdivisions, for the various kinds of work necessary to be done in the construction of the railroad. The subdivision "masonry" embraced all the rock work, which was again subdivided into (1) first-class bridge masonry; (2) second-class bridge masonry; (3) arch-culvert masonry; (4) box-culvert masonry; (5) paving; and (6) rip-rap—with separate provisions as to each. In reference to the "first-class bridge masonry" the specifications provided, (1) that it "will be built of the best description of range rock work;" and (2) that "the courses shall not be less than twelve nor more than thirty inches in thickness, decreasing from bottom to top of walls." After each separate class of work had been provided for, the specifications stated certain "general conditions" applicable to all classes, among which were: (1) "The kind and quality of all materials to be used in the work shall be subject to the inspections, tests, and approval of the engineer; and (2) "any departure from or refusal to comply with the instructions given by the engineer in charge shall be considered a violation of this contract, and the engineer shall have full power to remove or cause to

be removed, at the contractors' expense, any work that may be performed in a manner contrary to the specifications or instructions given."

In June, 1887, Jones & Carey entered into a written contract with Ward Risley, wherein the latter agreed with the former to do all said "first-class bridge masonry" at certain points on said road, "according to the specifications of the Gulf, Colorado & Santa Fe Railroad, and to the acceptance and satisfaction of the chief engineer of said company." Said specifications thus became and were a part of this contract, as much as if embodied therein.

Restated, then, the written contract between Jones & Carey and Ward Risley, as applied to the bridge piers about which this suit arose, provided, among other things, (1) that they "should be built of the best description of range rock work;" (2) that "the courses should not be less than twelve nor more than thirty inches in thickness, decreasing from bottom to top of walls;" (3) that "the kind and quality of all materials to be used in the work shall be subject to the inspections, tests, and approval of the engineer;" (4) that "any departure from or refusal to comply with the instructions given by the engineer shall be considered a violation of this contract, and the engineer shall have full power to remove or cause to be removed, at the contractor's expense, any work that may be performed in a manner contrary to the specifications or instructions given;" and (5) that Risley should do the work "to the acceptance and satisfaction of the chief engineer of said company."

Plaintiff Risley introduced testimony tending to show, that before signing said contract of June, 1887, he had a verbal agreement with said engineer and Jones & Carey, to the effect, that the rock necessary to construct the piers of the bridges, agreed to be constructed by him under said contract, could be taken from the Red River quarry, the courses to be of the same thickness as those of the Red River bridge; and that after the contract was executed, said engineer refused to allow stone from said quarry to be used for the foundations of said piers, requiring a much harder stone, and refused to allow the stone taken from such quarry for the body of said piers to be cut the same thickness as the courses in the piers of the Red River bridge, requiring the stone to be cut much thinner, whereby he, plaintiff, was compelled to expend large sums of money, in obtaining and cutting said hard stone and cutting down the other stone, in excess of what it would have cost him to have done the work he did of the kind of stone and thickness of courses fixed by said antecedent verbal agreement.

For such excess he seeks to recover of Jones & Carey, they having paid him the price fixed by the written contract. Upon this issue the court instructed the jury as follows:

"It is not provided in said written contract nor in said specifications at what time such engineer should inspect and approve of the kind and quality of the material used or to be used, nor when he should determine the thickness of the courses of the masonry within the prescribed limits —twelve to thirty inches. And if, in anticipation of a subcontract such

as made by plaintiff, before the same was made, such engineer should, at the request of the contracting parties, designate a certain kind of stone, satisfactory material for the work about to be constructed for them, said contracting parties would have a right to make the contract with reference to such material, and if they did so, they would be bound thereby, though nothing was said on the subject in the written contract; and if under such circumstances as above said engineer should also designate or fix a rule by which stone should be prepared for said work, such contracting parties would have the right to contract with reference to said rule, and if they do so they would be bound thereby, though nothing was said in the written contract as to said rule."

Jones & Carey, against whom the judgment rendered in the trial court was affirmed in the Court of Civil Appeals, assign said charge as error in this court; for the reason, that it authorized the jury to consider said antecedent verbal agreement as varying and controlling the terms of the written contract aforesaid between Jones & Carey and Risley.

Whether this assignment is well taken is the principal question to be decided.

By the terms of this contract, Jones & Carey and Risley agreed that the engineer should determine the "kind and quality" of the stone to be used in the work, and the thickness of the "courses."

The instrument contemplated, and the parties agreed therein to be bound by, the future determinations of the engineer acting under and in pursuance of the powers therein conferred upon him; and a compliance with such determinations to the acceptance and satisfaction of the engineer was, by the terms of the written contract, made the test by which it should be decided whether Risley had performed his contract with Jones & Carey. The contract does not refer to or set up any previous agreement between the parties or determination by the engineer, fixing the kind or quality of stone or thickness of courses, as the standard by which it should be determined when or whether Risley had complied therewith.

If we look to the plain language of the written contract between the company and Jones & Carey, and the one between Jones & Carey and Risley, we find that the respective parties thereto have thereby agreed upon the same means of determining the kind and quality of the stone and the thickness of the courses, namely, the decision of the engineer; and it is clear therefrom that Jones & Carey, in subletting the work to Risley, intended to and did so bind him that a performance of his contract would fully discharge their obligation to the company in regard to this particular work.

The powers conferred upon the engineer in the principal contract being of a very general and unlimited character, and extending to the time the work should be done to his "satisfaction and acceptance," it became of vital importance to Jones & Carey, in subletting to Risley a portion of the work covered by said principal contract, to insert in their contract with Risley stipulations conferring upon the engineer the same

powers, and binding Risley by the exercise thereof to the same extent that they were bound to the company. If Risley was not willing to confer such powers upon the engineer and to be bound by his decisions thereunder, he should not have so stipulated in his written contract. He should have insisted upon the insertion of a stipulation in accordance with the antecedent verbal agreement, testified to by him, to the effect, "that he should build the piers of the bridges, including foundations, out of rock from the Red River quarry, courses to be of the same thickness as those in the Red River bridge," in lieu of the stipulations aforesaid actually inserted therein, conferring upon the engineer the power to determine the "kind and quality" of the stone and the thickness of the "courses."

The verbal agreement determined upon a certain stone, to be cut so that the "courses" would be of the same thickness as those in the piers of the Red River bridge, while the written contract thereafter executed left the stone and thickness of "courses" undetermined, and authorized the engineer to determine same. Each of these two agreements relates to and provides for the same subject of contract, the fixing of some means, binding upon both parties, of determining the stone to be used and the thickness of the courses, and they are essentially antagonistic. Under an absolute rule of law, the wisdom of which has been established by the sanction of ages, the parties are conclusively presumed to have abandoned the verbal agreement at the time they executed the written one.

In the case of Jones & Carey v. Gilchrist, 88 Texas, 88, in passing upon the same question now before us, we said: "As we construe the written contract entered into between plaintiffs and Jones & Carey, the antecedent oral agreements, if allowed, would clearly vary the same by substituting the oral agreements to the effect that the stone from Red River quarry, cut to a thickness of eighteen inches, could be used in building the piers, including foundations, in lieu of the provisions in the written contract above referred to, as conferring upon the engineer the power of determining the kind and quality of stone and thickness of courses."

It is not necessary to enter into a discussion of the proposition, urged in that case and again urged here, that we did not correctly construe the charge given therein, for if it be conceded, as contended, that the charge therein given was substantially the same as the one now before us, its effect was, as claimed by plaintiffs in error there, to authorize the jury to vary the written contract by the antecedent verbal agreement, and therefore it remained subject to the disapproval of the language above quoted. It is contended that said charge must be sustained, however, under the doctrine laid down in the case of Ricker, Lee & Co. v. Collins, 81 Texas, 663. In that case, the sub-contractor, Collins, after he made his contract with Ricker, Lee & Co., and before he did the work, demanded and obtained the decision of the engineer as to the classification of the rock, and it was held, that after he did the work under and in

pursuance of such classification, the engineer could not "make another classification more onerous to plaintiff * * * without perpetrating a fraud upon him."

The question as to whether a written contract could be varied or contradicted by an antecedent verbal agreement did not arise under the facts, was not raised by the assignment of errors, and was not even alluded to in the opinion of the court. The case was decided upon the familiar principle, that the engineer having, in the due exercise of the powers conferred upon him by the parties in their contract, classified the material, and Collins having done the work, relying upon such classification, the parties to such contract were, in the absence of any charge of improper conduct on the part of the engineer, estopped from questioning its correctness to Collins' prejudice.

If Jones & Carey and Risley, relying and acting upon the verbal agreement or decision of the engineer testified to by Risley, had, in their written contract, stipulated that the piers should be built of stone from Red River quarry, the "courses to be of the same thickness as those in the Red River bridge, then, if the engineer had authority under the contract between Jones & Carey and the company to determine the question at that time, it might have been contended, that under the decision . in Ricker, Lee & Co. v. Collins he could not have afterward rightfully refused to allow the use of such stone of the agreed thickness. No question of estoppel, however, can arise in this case, for, in legal contemplation, the verbal agreement not being permitted to vary the written contract, neither Jones & Carey nor Risley acted upon the determination of the engineer in making their written contract.

The rule of law prohibiting the violation or contradiction of the subsequent written contract by the verbal agreement, can not be evaded by allowing Risley to set up such verbal agreement to estop Jones & Carey from holding him bound by the provision of the writing conferring upon the engineer power to determine "the kind and quality" of stone and thickness of "courses." Then, since Jones & Carey were, neither by contract nor by estoppel, bound by such verbal agreement to Risley, it follows, that the company was not bound to either of them by virtue thereof.

We are therefore of the opinion that the assignment of error is well taken.

The petition alleges the making of the verbal agreement and the subsequent execution of the written instrument between Jones & Carey and Risley, the subsequent refusal of the company to allow Risley to use the stone of the kind and thickness fixed by said verbal agreement, the refusal of Risley to proceed with the construction of the piers, the request of Jones & Carey for him to proceed to build the piers of such stone with "courses" of such thickness as the engineer might direct, they verbally agreeing to pay him such sum as he should expend in so doing in excess of what he would have been compelled to expend in complying with the verbal agreement, and the doing of the work by Risley, in

pursuance of such request and agreement, at an extra cost of a large sum, for which he sues.

The court in effect charged the jury, that if they found such facts to be true, they would find for the plaintiff Risley. The giving of this charge is assigned as error, for the reason that there was no consideration for the agreement by Jones & Carey to pay Risley extra compensation.

The petition and charge of the court show that the case was presented and tried upon the theory that said antecedent verbal agreement was binding upon the parties, and therefore that, when the engineer refused to recognize same, Risley had the right to cease work under his contract, and having done so the promise of Jones & Carey to pay him extra compensation was supported by a consideration. As we view the case, under the principles above discussed, the antecedent verbal agreement must be conclusively presumed to have been abandoned at the time of entering into the subsequent written contract, and its prior existence afforded no excuse or justification for Risley's refusal to comply with the directions of the engineer, as he agreed to do in the written contract between him and Jones & Carey; and since the subsequent promise of Jones & Carey to pay him extra compensation was for the purpose of inducing him to do what he was already bound to do under such written contract, there was no consideration to support same. So long as Risley does not allege and prove such improper conduct on the part of the engineer as will relieve him from his written agreement to abide by the decision of the latter, he must be held bound thereby. Railway v. Henry & Dilley, 65 Texas, 685; Railway v. March, 114 U. S., 549. There is no allegation in the petition charging any improper motive or conduct on the part of the engineer in rejecting material tendered by Risley under the contract, or in prescribing the thickness of the courses; nor does the charge present any such issue from which the jury might have found that Risley was relieved from his written agreement to abide the engineer's decision, and therefore at liberty to refuse to go on with his contract, whereby a new consideration arose to support Jones & Carey's subsequent promise to pay him extra compensation for complying with the fraudulent demands of the engineer, with which he was not under any prior contractual obligation to comply.

We are of opinion that the assignment is well taken.

We have given this case a careful consideration, but have been unable to escape the conclusion that it was tried below upon an erroneous view of the law. Upon another trial it is not probable that many of the questions presented in other numerous assignments will occur, and we do not deem it necessary to notice them.

For the errors above indicated, the judgments of the Court of Civil Appeals and the District Court are reversed, and the cause remanded as between Jones & Carey and Risley, and affirmed as to the railroad, as to whose dismissal no complaint is made.

*Reversed and remanded.*