WELSH et al. v. WARREN.

(Court of Civil Appeals of Texas. Texarkana. May 29, 1913. On Motion for Rehearing, June 26, 1913.)

1. PRINCIPAL AND SURETY (§ 117*) — DISCHARGE—BUILDING CONTRACTS — IMPROPER PAYMENTS TO PRINCIPAL.

A building contract which stipulates for weekly payments of 85 per cent. on estimates of the actual labor done and materials furnished, and for the payment of the balance on completion of the work, does not require that the payments shall be in proportion only as the work done bears to the completed building, or that the owner shall pay only a certain per cent. of the contract price as the building progresses, and does not require that 15 per cent. each of the amount of labor done and of materials furnished shall be reserved for protection of a surety, but the contract is complied with provided there is not a payment in excess of 85 per cent. of the whole estimate made up of labor and material furnished.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 283–285; Dec. Dig. § 117.*]

2. PRINCIPAL AND SURETY (§ 117*) — DISCHARGE — BUILDING CONTRACTS — IMPROPER PAYMENTS TO PRINCIPAL.

Evidence held to support a finding that an owner employing a contractor to construct a building under a contract calling for weekly payments of 85 per cent. on estimates of the actual labor done and material furnished did not make advances to the contractor in excess of the contract, and the contractor's surety was not released.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 283–285; Dec. Dig. § 117.*]

3. PRINCIPAL AND SURETY (§ 83*)—BUILDING CONTRACTS—ESTOPPEL TO ASSERT LIABILITY.

Where a building contract provided that the contractor would furnish the labor and materials to the satisfaction of an architect, but that no acceptance or payment should be con-

clusive of full performance, and that the owner should make weekly payments of 85 per cent. on estimates of the actual labor done and materials furnished, and the parties agreed that a third person should make weekly estimates without authority to superintend the work, the owner making weekly payments on estimates furnished was not estopped as against the contractor's surety from recovering expenses in overhauling and rebuilding part of the work improperly done.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 129, 130; Dec. Dig. § 83.*]

4. PRINCIPAL AND SURETY (§ 82*)—EXTENT OF LIABILITY — BUILDING CONTRACTS — CONSTRUCTION.

Where a building contract provided that the advances required to be made by the owner each week should not be deemed an acceptance or waiver of any defective work by the contractor, and did not require the owner to inspect the quality and character of the work, or that the architect should do so before the owner should make the advancements, the owner making the advancements was not estopped from recovering from the contractor's surety as a part of the damages the amount paid the architect for services in supervising the overhauling of defective work done by the contractor.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 127; Dec. Dig. § 82.*]

Appeal from District Court, Upshur County; R. W. Simpson, Judge.

Action by J. R. Warren against Frank Welsh and another. From a judgment for plaintiff, defendants appeal. Affirmed.

Appellee brought this suit against Frank Welsh and the Commonwealth Bonding & Casualty Insurance Company, a corporation, on a bond executed to him by Frank Welsh, as principal, and the Commonwealth Bonding & Casualty Insurance Company, as surety. The bond was conditioned for the performance and fulfillment on Frank Welsh's part of a contract of even date with the bond for the furnishing of material and all labor and to erect a certain building on the property of appellee according to plan and specifications attached to the contract. By the terms of the contract Frank Welsh was to erect, according to agreed written plan and specifications, a two-story residence and to furnish all necessary labor and materials, except such material as was specially mentioned as being furnished by the owner, and was to complete the building by May 15, 1912, or to pay to the owner $2 per day for every day after the 15th of May that the work remained unfinished. In constructing the building Welsh was to perform the labor and furnish the materials "under the direction and to the satisfaction of J. Dawson Mathews, architect, or such other person as may be employed by the owner as superintendent," and the contract provided that "the contractor within 24 hours after receiving written notice from the superintendent shall remove from the grounds or building all condemned materials, whether worked or unworked, and shall take down all work condemned as unsound and improper, or as in any way

failing to conform to the drawings and specifications, and in case of his failure so to do the superintendent acting for the owner may, after three days' notice, furnish such materials or labor as may be necessary to have such direction performed, and the expense incurred thereby shall be charged as a payment to the contractor under this contract. If such expense shall exceed unpaid balance, contractor shall repay owner on demand." It was further provided: "The contractor shall permit the architect, the owner, and all persons representing said parties to inspect the work or any part thereon at all times during the progress of the same." Appellee was to pay Welsh therefor "the sum of $3,300 as follows: Each week during the life of this contract and progress of work, estimate shall be made of actual labor done and material furnished, and owner shall pay 85 per cent. of same upon said estimate, lawful money U. S. A.; remainder of contract price retained by owner shall be paid in lawful money of the U. S. A. within five days after work is completed, except the owner shall have the right to retain any sums necessary to pay off just and unsatisfied claims against the contractor for labor or material used on said work, said claim being for labor or material to be furnished by contractor under the terms of the agreement, also may, at his option, retain the sum of 10 per cent. of the total contract price and 10 per cent. of any price made for extra work for a period of 30 days after completion of contract." It was stipulated: "It is agreed no acceptance or payment under the contract shall be conclusive that the contractor has fully performed this contract if, as a matter of fact, he has not done so nor as a waiver of any defective work." Welsh performed about two-thirds of the work but abandoned the contract before the building was completed; and appellee, who in the meantime had paid Welsh on estimate of actual labor done and material furnished $2,528, was compelled to finish the building at an additional cost to him of $4,411.47 as being necessary to complete the building according to the plan and specifications. There is no question made on appeal that Welsh did not fail to comply with his contract. Appellee alleged performance of the stipulations in the written contract to be performed by him and averred as a breach the abandonment of the work by Welsh, and his failure, and the surety's failure and refusal to complete the same, necessitating the employment by him of others at great expense to him, the inferiority of the work done and failure to be in accordance with plans and specifications, requiring it to be torn down and overhauled, and appellee's loss thereby, placing his damages at $3,735. There is no question made over the inferiority of the work done by Welsh. Other parties were brought in the case on the ground that they

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

were asserting some kind of liens, but as they passed out of the case it is not necessary to refer to them. Frank Welsh did not make answer. The Commonwealth Bonding & Casualty Insurance Company answered by denial and specially pleaded: (1) That appellee had paid Welsh $2,528 without reference to work done, which breached the terms of contract requiring only 85 per cent. of the estimate of actual labor done and material furnished to be paid before the completion of the building; (2) that the amount sued for, except $750, represented a complete change of the plan and specifications, and appellant was not liable therefor; and (3) that appellee had a superintendent who superintended the work and paid out the money weekly for him, and this paying Welsh $2,528 was an acceptance by appellee of the work done and material furnished by Welsh up to the time of the abandonment, under the terms of the contract, and the surety company was not liable for moneys expended in overhauling and rebuilding such work done by Welsh. A trial was to the court without a jury, and judgment was rendered against Welsh for $3,600 and against the surety company for $3,300, with 6 per cent. interest. The evidence warrants the judgment for appellee, and the judgment is therefore sustained.

McCord & Campbell, of Longview, for appellants. Warren & Briggs and M. B. Briggs, both of Gilmer, for appellee.

LEVY, J. (after stating the facts as above). [1, 2] By its second assignment of error the appellant surety company makes the contention that judgment should have been entered in its favor because it was discharged through the failure of the owner of the house and the contractor to perform the contract according to the agreement therein which provided that the owner was to pay the contractor for the work "the sum of $3,300 as follows: Each week during the life of this contract and progress of work estimate shall be made of actual labor done and material furnished, and owner shall pay 85 per cent. of same upon said estimate in lawful money U. S. A.; remainder of contract retained by owner shall be paid in lawful money of the U. S. A. within five days after work is completed." The contract contained the agreement mentioned. The evidence admittedly shows that the contractor abandoned the contract after commencing the work. At the time the contractor abandoned the contract, the building was about two-thirds finished, having the walls and partitions up, the floors to the second story in, and the roof on. At the time of the abandonment of the contract the appellee had paid over to the contractor the total sum of $2,528; the same having been paid only as the work progressed each week and only for labor done and material furnished for the building. As to whether there was compliance with or failure of performance of the particular terms of contract complained of rests in the evidence given by appellee and Mitchell. Appellee testified that "It was agreed between Welsh and me that for the purpose of making estimates of the work, and so far as making payments was concerned, Mr. Mitchell would look after that, as superintendent to that extent. * * * I think it was $2,528 that I paid to Welsh, leaving only a balance of $772 to complete the building. * * * I did not have him to furnish me along, while he was erecting the building, with the bills for the different materials which he had purchased; I knew about practically most of the bills, but I did not take any copies of any bills. When I paid him I reserved nothing with which to pay these bills. I would not pay him just whenever he would call on me for money. As the work progressed every week Mitchell paid him the amounts. I put the money to his credit as trustee to make payments. * * * Every week he advised me of the amounts he was paying; he knew how many men they had on the job and could tell how many days' work they had put in. It was a matter of very easy calculation, what the labor amounted to, and in that way the estimates were made. * * * I did not pay up the labor in full. The purpose and intention was to keep back within the provisions of the contract all the time. I presume that the laborers were paid in full each week up to the last week, when they were not; but the material was not paid up in full; the material was never paid up in full. Each week I took an approximate estimate of everything as it went along. The superintendent would know as what his judgment was as to whether or not the proper estimates were made on the work as it progressed. * * * As to what estimates Mr. Mitchell made of the work, and whether he paid 85 per cent. of the labor and material, or whether he paid all the labor off each week, I know that after the matter was wound up (that is, when Welsh quit) there was $668.30 of labor and material that went into the building that had not been paid for by me or Welsh; and that is more than 15 per cent., which the contract says I shall keep back."

W. B. Mitchell testified as follows: "Mr. Warren asked me to look over the building and to make estimates on it and to see if anything went wrong. I am familiar with the provisions of the contract relative to making payments of 85 per cent. of labor done and material furnished. In making the estimates I estimated and paid, according to my best judgment, within the 85 per cent., and I tried to hold it to less than that. The payments were made according to my estimates from time to time. When the foreman presented his bills and pay rolls I would look over his list, and I demanded the time book; and by that means, and with my

knowledge of the men he had on the job, passing there every day, I would arrive at the correctness of the matter. I did not keep the bills and pay rolls, but I took a receipt for the checks I gave him showing whether for labor or material." He further testified: "I would pay the men up entirely every Saturday night. In some cases I did not pay them up entirely, and in some cases I did not hold back anything. I kept the labor pretty well paid up as I went along. I paid off for part of the material that he furnished. For instance, a bill for material was furnished; I would not deduct 15 per cent. of it, but would pay it all, whatever it was. I paid their bills for freight in full. I did not deduct anything out of the bills, but would just pay their bills. * * * I paid the money directly to Mr. Cuberly, gave him a check, and he paid the bills himself. Whenever he presented a bill, for instance, he claimed he had a bill for sand or something of that sort to be paid, I made an estimate and considered whether or not he had enough to cover that within the 85 per cent.; and if he did, on my estimate, I paid it. I did the same way with reference to labor, pay rolls, making my estimates on labor done and material furnished as a whole." He further testified that he knew Welsh was getting hardware, cement, and the materials in the aggregate of $668.30, and that in making his estimates he figured these as part of the material on the ground, but no bills for said items were ever presented or paid, and according to his estimates payments were less than 85 per cent. It was shown that there was $668.30 worth of material furnished in the building at the time above the $2,528 paid the contractor and not paid for by the owner or the contractor.

The following cases seem to be authority for the proposition that the surety of the contractor would be released if advances were made by the owner to the contractor in excess of contract provisions: Ryan v. Morton, 65 Tex. 258; McKnight v. Mfg. Co., 155 S. W. 977. And we for the moment assume the correctness of the decisions mentioned. The difficulty here, though, is to hold that the evidence so conclusively establishes, as assumed by the assignment, that there was such a breach of the terms of contract mentioned on the part of the owner of the house and the contractor as to require the court to say, as a matter of law, that there was a breach in respect to the points above mentioned. The judgment of the trial court involves the finding of fact against the contention made by appellant, and we would not be authorized to disturb such finding if there is evidence to warrant such finding. It is plain to be seen, we think, from the language of the provision in question, that it was not the agreement of the owner and the contractor that payments by the owner to the contractor should be in proportion only as the work bore to the complet-

ed building, nor that the owner should pay only a certain per cent. of the contract price as the building progressed. The payments were to be, as expressly provided, 85 per cent. of each weekly "estimate" made "of actual labor done and material furnished." That the payments were made weekly during the progress of the work, and only for actual labor done and material furnished, seems not to be a disputed point in the evidence. Hence the fact appearing that the building was only two-thirds completed at the time of the abandonment, in connection with the fact that $2,528 was paid of the $3,300 contract price, would not in this record be sufficient to show accelerated payments in violation of the contract. And the assignment must rest for merit entirely upon the further contention that the evidence shows that the owner in the payments made exceeded 85 per cent. of "said estimate." It would be difficult to say that the evidence did not authorize the finding by the trial court, as involved in the judgment, that an "estimate," within the meaning of the contract, was made by the parties, and that advances were made by the owner's agent on such estimate as a whole. While it does appear that the labor was paid in full at the end of each week, it does not appear conclusively, taking the evidence as a whole, that the estimate of the cost of the material for the building was fully paid up and in excess of 85 per cent. of the whole estimate. The language of the provision does not require that 15 per cent. each of the amount of the labor done and the amount of material furnished shall be reserved by the owner. It is of sufficient compliance that there be not payment in excess of 85 per cent. of the whole estimate made up of both labor done and material furnished. And especially was the finding warranted that at the time of the abandonment of the contract the payments were not in excess of the amount to be paid under the contract if force and weight be given, as the court was authorized to do, to the fact that $668.30 worth of material was not paid by the owner. This item of material aggregating $668.30 that went into the building, when added to the $2,528 paid by the owner, would go to show that $3,196.30 in labor done and material furnished went into the building, and that the owner had not paid on the whole estimate a sum in excess of 85 per cent. It is shown that this $668.30 was in the estimated sum on which Mitchell figured 85 per cent. As we cannot say, as a matter of law, that the evidence shows a breach of the agreement, the assignment must be overruled.

[3] By the third and fourth assignments of error grouped the contention is made that it was error to allow appellee a recovery for the especial amount of expenditures for labor and material shown in the evidence to have been necessarily incurred in overhauling and rebuilding certain work of the contrac-

tor, because appellee's superintendent, Mitchell, made payments for the work done and materials furnished and made no objections as the work progressed, and which operated as an acceptance of the work done by the contractor, concluding appellee under the contract from questioning the inferiority of the contractor's work. In other words, the assignment complains of the judgment being excessive to the amount expended in overhauling the inferior work of the contractor for the reasons advanced in the assignments. It would seem to be a full answer to the assignments, as against the contention of estoppel by negligence against the appellee as a matter of law, that the parties to the building contract expressly provided: "It is agreed no acceptance or payment under the contract shall be conclusive that the contractor has fully performed this contract, if, as a matter of fact, he has not done so nor as a waiver of any defective work." And further on the facts of the case we cannot say that estoppel by negligence, as a matter of law, exists, and the assignments for this reason must be overruled. The contract provided: "The contractor shall and will well and sufficiently perform and furnish the labor and materials under the direction and to the satisfaction of J. Dawson Mathews, architect, or such other person as may be employed by the owner as superintendent." The testimony in the record shows that Mitchell was not employed as a superintendent on the building, but it was agreed between appellee and the contractor that Mitchell should be the person to "estimate" weekly the cost of actual labor done and materials furnished for the purpose of having the 85 per cent. paid. It was understood that Mitchell was not to perform any duties on or about the building. As Mitchell was not a superintendent on or about the building, and it was so understood that he was not, he owed no duty under the contract to make decision and pass upon and approve or disapprove the work being done by the contractor. If it had appeared as a fact, which it does not here, that Mitchell was a superintendent employed as such on the building by the owner, then a different ruling might be made. Jones v. Risley, 91 Tex. 1, 32 S. W. 1027. And as the authority of Mitchell was to make "estimate" only for purpose of advances, and with no authority to inspect or superintend the work and the kind and quality of the work done, it would follow that appellee was not bound by the contract nor by estoppel from questioning the inferiority of the work done by the contractor. Mathews, the architect, testified that he drew the plan and specifications, but that he was never on the ground while the contractor was putting up the building, and never inspected the building until after the contractor abandoned the work. When the architect did inspect the building he discovered that the walls of the building were not plumb, the floor was not level, the foundations were in wrong, none of the rooms were of the size called for by the plan, and the brick work had cracked. It was necessary for the whole work to be gone over because of its inferiority and to complete it according to the contract plan and specifications. No question is made as to the inferiority of the work done by the contractor nor as to the work not being done according to the plan and specifications, and no question is made that the architect specified did accept the work of the contractor as it progressed. The surety company guaranteed the faithful performance of the work, which involves a risk on the part of the surety company of the inferiority of the work done by the contractor. And, besides, paragraph 3 of the contract contemplates that the work may be done defectively by the contractor and authorizes the owner to have such condemned work done over and the expense incurred charged to the contractor and paid by him. Hence the amount necessary and proper for overhauling the work is recoverable. The assignments are overruled.

[4] By the fifth assignment the contention is made that appellee was not entitled to recover as a part of his damages the amount paid the architect for services in supervising the overhauling of the work done by the contractor on the ground that appellee was estopped from making such claim by reason of having paid out the advances required by the contract without inspection of the work done either by himself, the architect, or the superintendent. It is believed there is no estoppel by negligence or carelessness, as a matter of law, in the case, as ruled in the preceding assignments, and this assignment should be overruled. The contract expressly provides that the advances required to be made by the owner each week shall not be deemed an acceptance or waiver of any defective work by the contractor, and the contract does not require that the owner shall inspect the quality and character of the work or that the architect or superintendent shall do so before the owner shall make the 85 per cent. advance. And it is not claimed that appellee himself, or the architect or Mitchell for appellee, ever as a fact accepted the work done by the contractor, either in whole or in part. So the evidence would seem to support the finding by the court, as involved in his judgment, that the owner was not guilty of negligence on which to predicate estoppel, and we would be bound by this finding, since the assignment does not challenge the finding of fact.

By the sixth assignment appellant contends that there was error in not allowing it credit for the sum of $772 balance due on the contract price of the building. It appears that the 85 per cent. advances paid to the contractor amounted to $2,528, leaving $772 as a balance of the $3,300 contract price. The itemized account of the damages sued on and proven was $4,411.47. The $772 was credited.

on this amount, leaving a balance of $3,639.47, and judgment was rendered against the contractor for the $3,639.47, and against appellant for $3,300 the amount of the bond. Thus it appears that due credit was allowed for the $772 by deducting that sum from the amount expended by appellee in completing the building. After deducting the $772 from the amount expended in completing, the remainder, which was $3,639.47, was the proven necessary cost of the building in excess of the contract price. The credit given inured to the credit and benefit of both the contractor and the surety, and the damages for which judgment was given were authorized.

The judgment is affirmed.

### On Motion for Rehearing.

Appellant especially argues that it was error to overrule the third and fourth assignments, which were grouped. We still think, as before, that the two assignments mentioned can only properly be construed as presenting for our determination the one point that the judgment is excessive to the extent of the amount expended by appellee in overhauling inferior work done by the contractor upon the ground that the proof established estoppel by negligence in supervising the work against appellee. This assumes, as we undertook to say before, that the proof so conclusively established estoppel by negligence as to require us to say, as a matter of law, that estoppel by negligence against appellee in supervision of the work of the contractor existed and should be applied. We still think we would not be warranted in so holding, as a matter of law, and that the finding of fact in that respect, as involved in the judgment of the court, would be binding on us. As we could not say, as a matter of law, that estoppel by negligence in supervising the work of the contractor was established against appellee, then we feel constrained to rule, as before, that the judgment could not be held excessive upon the ground of the assignment.

The motion is overruled.