### HOGAN et ux. v. W. H. NORRIS LUMBER CO.

#### No. 1615.

Court of Civil Appeals of Texas. Waco.
July 10, 1935.

Rehearing Denied Sept. 19, 1935.

Lem Wray and W. D. Colvin, both of Waxahachie, for appellants.

J. C. Lumpkins, of Waxahachie, and Walter S. Jones, of Ennis, for appellee.

GALLAGHER, Chief Justice.

This suit was instituted by appellee, W. H. Norris Lumber Company, a corporation, against appellant, Matt Hogan and wife, Vernie Hogan, to recover a balance of $766, with interest and attorney's fees, alleged to be unpaid on a note in the sum of $1,000, given by appellants to D. E. Lyall, and to foreclose a mechanic's lien given by them to secure the same on a lot of land in the city of Ennis, known as the Douthett lot. Said note and lien were dated March 1, 1929. Lyall, the payee in said note and the purported contractor in said mechanic's lien contract, was the manager of the Burr Lumber Company, and was acting for it and not for himself in the several transactions involved in this case. The corporate name of the Burr Lumber Company has been changed to W. H. Norris Lumber Company. Mrs. Hogan, at the time of the execution and delivery of said note and lien, owned as her separate property lot 10 in block 183 of the city of Ennis, and she and her husband resided thereon. She also owned as her separate property said Douthett lot. Said lumber company was at that time engaged in business in the city of Ennis.

Appellants alleged that Lyall agreed with them verbally to build a three-room house and a double garage on the Douthett property and to repair and enlarge the house on lot 10 on which they then resided; that the agreed price for the new house and garage was $665, and the agreed price of repairing and enlarging the old house was $1,100; that Lyall promised to procure a loan for them on said lot 10 after they vacated the same in the sum of $2,000 and to pay out of the proceeds thereof the cost of the new house and garage on the Douthett property, leaving the same unencumbered for their use as a home, and to also pay out of such proceeds the cost of repairing and enlarging the old house on said lot 10, and to pay the remainder of such proceeds to them in cash. They alleged that they had been fraudulently induced to sign the note and lien sued on; that appellee, through said Lyall, negotiated a loan on said lot 10 for the sum of $2,500 and had converted the excess over the agreed

price of all said improvements as aforesaid to its own use in the sum of $735, for which they sought judgment. They also prayed for the cancellation of the note and lien sued on as a cloud upon their title to the lot described therein.

Appellee denied all appellants' allegations of fraud, and alleged that appellants, subsequent to the execution and delivery of the note and lien sued on, executed to said Lyall a note for the sum of $2,500 and a mechanic's lien contract to secure the same on said lot 10 for the cost of repairing and enlarging the house thereon; that on the completion of such work, a loan was obtained on such property in like sum; that it had applied the proceeds of the same to the discharge of said cost of repairing and improving the house on lot 10 and other expenses as directed by appellants, and had, at their request, credited the remainder, amounting to $212.56, on the note sued on.

Appellee's manager, Lyall,. died prior to the institution of this suit. The note and lien given by appellants for the repair and enlargement of the old house on lot 10 were introduced in evidence, and were, in substance, as alleged by appellee. They were both executed May 3, 1929, more than sixty days after the execution of the note and lien sued on herein. Appellee's witnesses testified that every detail of the work of repairing and improving the old house on lot 10, including the kind and amount of material and the kind and cost of labor, was agreed to by Hogan as the work was done. Appellants' book accounts showing the cost of the new house and garage and the cost of the labor and material for repairing and improving the old house on lot 10, and also the incidental expense incurred in connection with the latter, were introduced in evidence. Appellee's bookkeeper testified that the charges for material furnished as shown by said accounts were the regular retail prices for such material at that time, and that the sums charged in said accounts for labor were actually paid to the parties performing the same. Said accounts showed that the cost of the new house and garage was approximately $1,100, and that the cost of the repair and enlargement of the old house was approximately $1,850, and that the incidental expense, including taxes, insurance, cost of abstract, etc., was approximately $437.44.

The case was submitted to a jury on special issues. Such issues and the findings of the jury in response thereto, so far as material to the disposition of this appeal, were as follows:

"1. Do you find from a preponderance of the evidence that D. E. Lyall acting for the plaintiff represented to and agreed with the defendants that from the proceeds from a loan to be procured on lot No. 10, block 183, Ennis, Texas, he would first build and deliver to them a three room house and double garage on the Douthett property in controversy in this suit, and that such small house would be free and clear of liens and indebtedness to them as a home? Answer: 'Yes.'

"2. Do you find from a preponderance of the evidence that when defendants signed the note sued upon and its accompanying mechanic's and materialman's lien before Walter S. Jones, notary public, they were relying upon such representations, if any, so made by the said D. E. Lyall? Answer: 'Yes.'

"3. Do you find from a preponderance of the evidence that when the defendants executed the note and lien against the Douthett property on March 1, 1929, Walter S. Jones, the notary public, represented to them that such instruments were required by the main office of the Lumber Company, and that the ninety day maturity of said note was a formality; that he knew Mr. Lyall and that Mr. Lyall would not press them on any interest? Answer: 'Yes.'

"4. Do you find from a preponderance of the evidence, that the defendants relied upon such representations, if any, so made by Walter S. Jones? Answer: 'Yes.'

"5. Do you find from a preponderance of the evidence, that plaintiff, acting through D. E. Lyall, agreed with the defendants, that he would improve and reconstruct the house on lot No. 10, block 183, Ennis, Texas, for between $1100.00 and $1200.00? Answer: 'Yes.'

"6. Do you find from a preponderance of the evidence, that plaintiff, acting through D. E. Lyall, agreed with the defendants, that he would construct for Vernie Hogan a three room house and double garage upon the Douthett property for $665.00? Answer: 'Yes.'

"7. Do you find from a preponderance of the evidence, that before the execution of any instruments connected with the transaction, that plaintiff, acting through D. E. Lyall, agreed with the defendants that a loan would be procured on lot No. 10, block 183, Ennis, Texas, and the proceeds there-

from would be applied first to the payment of the $665.00 to build the small house on the Douthett property, and then to make improvements on said lot No. 10, for approximately $1100.00 and to deliver the balance to the defendants? Answer: 'Yes.'

"8. Do you find from a preponderance of the evidence that the plaintiff converted such balance, if any, derived from the proceeds of the $2500.00 loan to its own use and benefit? Answer: 'No.' * * *

"12. Do you find from a preponderance of the evidence, that the notary public, Walter S. Jones, at the time he took the acknowledgment of the defendant, Vernie Hogan, to the mechanic's lien of date March 1, 1929, securing the $1000.00 note sued upon, explained to her the substance and meaning of such instrument? Answer: 'Yes.'

"13. Do you find from a preponderance of the evidence, that plaintiff through its agent D. E. Lyall and the defendant, G. M. Hogan, agreed on Walter S. Jones as the person to draw the note and mechanic's lien involved in this case, and before whom the acknowledgments to same should be taken? Answer: 'Yes.'"

Appellants filed a motion in general terms for judgment in their favor on the verdict, which motion the court denied. The court in the judgment rendered recited that the uncontradicted evidence showed that appellants executed the note and lien sued on, and awarded appellee a recovery against them for the sum of $980.42 balance due on said note and a foreclosure of the lien given by them on the Douthett lot to secure same. Appellants were denied any recovery on their cross-action.

### Opinion.

 Appellants' sole contention herein is that they are entitled under the findings of the jury above recited to a judgment canceling the note sued on and the lien securing the same. They insist that such findings, considered as a whole, established that they were fraudulently induced to execute such note and lien and required the court to enter a judgment canceling the same. There is no contention that appellants or either of them did not know the note sued on was for the sum of $1,000, and that the mechanic's lien contract declared that the same was the consideration to be paid for building the house and garage described therein nor that the legal

effect of such contract was to create a lien on the Douthett lot to secure the payment of said note according to its tenor. The jury found that the notary, Jones, did in fact explain the substance and meaning of the mechanic's lien contract to Mrs. Hogan when he took her acknowledgment to the same. It is true that the jury found in answer to the sixth issue that Lyall agreed with appellants that he would construct a three-room house and double garage on the Douthett lot for $665, but there is no finding that the house and garage contemplated in such verbal agreement was the identical house and garage described in such contract and afterwards actually constructed on said property. Neither is there any finding that appellants at the time they executed said note and contract did not understand and contemplate that the sum of $1,000 of the proceeds of the expected loan to be procured on the home place would be appropriated to pay said note. As a general rule, where the terms of the agreement are reduced to writing, all prior and contemporaneous negotiations, agreements, and promises are merged in the written contract. 10 Tex.Jur. 366, par. 208, and authorities cited in note 11 thereto; Jones & Carey v. Risley, 91 Tex. 1, 5, 32 S.W. 1027; Milliken v. Callahan County, 69 Tex. 205, 210, 6 S.W. 681; Eldora Oil Co. v. Thompson (Tex.Com.App.) 244 S.W. 505, 508, par. 5; Bains v. Robert & St. John Motor Co. (Tex.Civ.App.) 72 S.W.(2d) 703, 704, and authorities there cited; Alamo Lumber Co. v. Fahrenthold (Tex.Civ.App.) 58 S.W.(2d) 1085, 1088, pars. 5 and 6 (writ refused). Absent a finding sustaining appellants' contention that they were induced to execute said instruments by fraud, the agreement embodied therein to pay $1,000 for the house and garage to be erected in pursuance thereof on the Douthett property could not be defeated, nor the amount to be paid reduced by the prior verbal agreement so found by the jury.

 Appellants rely on the answers of the jury to the first, second, third, and fourth issues to constitute a basis sufficient to require the court to render the judgment for cancellation demanded by them herein. The substance of the findings in response to the first and second issues is that Lyall, acting for appellee, represented and agreed with appellants that from the proceeds of the loan to be secured on lot 10 he would first build and deliver to them a three-room house and double garage on the Douthett

lot, and that such house would be clear of liens or indebtedness, and, further, that appellants relied on such representations. It will be noted that no issue of the cost of construction is embraced in this finding, and that the gist of the same is appellee's promissory agreement or representation that the house on the Douthett lot should be paid for out of the proceeds of a loan to be thereafter procured by appellants, and that said lot when turned back to appellants should not be encumbered by a lien. The general rule is that a false representation, in order to authorize relief on the ground of fraud, must be of a past or existing fact and not a promise of something to be done in the future, even though the promise is without any excuse subsequently broken. 20 Tex.Jur. p. 31, § 16, and authorities cited in note 17; Chicago, T. & M. C. Ry. Co. v. Titterington, 84 Tex. 218, 223, 19 S.W. 472, 31 Am.St.Rep. 39; Swink v. City of Dallas (Tex.Com. App.) 36 S.W.(2d) 222, 227, par. 12; see, also, cases cited in 20 Tex.Jur. p. 32, note 19. In order for a promise to constitute fraud, it is necessary that it should be made with the intent at the time that it would not be performed and with the intention, design, and purpose of deceiving. 20 Tex.Jur. p. 33, and note 20. Even in cases of statutory fraud, as defined in article 4004 of our Revised Statutes, a promise to do an act in the future, to constitute fraud, must be a false promise; that is, one made with a present intention not to perform the same. Clem v. Evans (Tex. Com.App.) 291 S.W. 871, 872, par. 3, 51 A. L.R. 1135. See, also, authorities cited in 20 Tex.Jur. 20, notes 14 and 15. There is no finding of the jury that the promissory representations found to have been made to appellants by Lyall on behalf of appellee were made with the intent at the time not to perform the same. Of course, appellants themselves were the only ones who could fix a lien on their property to secure the contemplated loan and the only ones entitled to receive and apply the proceeds thereof, and we think the necessary implication from such findings is that it was agreed that appellee should be paid by appellants for the construction of such improvements on the Douthett lot out of the proceeds of such loan. The findings of the jury in answer to the third and fourth issues submitted are, in substance, that the notary, Jones, represented to appellants that appellee required the execution of the note and mechanic's lien contract before erecting such improvements, that the ninety-day maturity of the note was a formality, and that Lyall would not, in his opinion, press them on the interest, and that appellants relied on such representations. The execution of said instruments was required by appellee, and no suit was filed thereon for nearly four years after the maturity of said note. Even conceding that appellee was bound by such declarations of the notary, appellants have not shown that they were false nor any specific injury resulting to them from their reliance thereon. Considering all said findings as a whole, we do not think they either authorize or require the rendition of a judgment canceling said instruments.

The note and mechanic's lien contract for repairing and enlarging the old house on lot 10 was signed and acknowledged by appellants more than sixty days after the execution of the instrument sued on herein. The note was for $2,500, and the mechanic's lien contract specified that the same was the consideration to be paid for the repairs and improvements enumerated therein. There is neither contention nor finding that any new representation or promise was made at that time to induce the execution of said instruments. The jury did find, in answer to the fifth issue, that Lyall, acting for appellee, promised to make the improvements on the old house on lot 10 for $1,100 or $1,200, but, according to the finding in answer to the seventh issue, such promise was made at an early stage in the negotiations and even before the instruments sued on herein were executed. There is no finding that the improvements contemplated by the parties at that time were the identical improvements described in the contract for improving the old house. Neither is there any finding that appellants relied on such representations or promises at the time they executed said second note and contract, and that they were induced thereby to execute the same. We see no reason why all prior verbal representations or agreements with reference to the nature and cost of the improvements to be made on the old house on lot 10 should not, under the authorities hereinbefore cited, be held to be merged into the written contract therefor.

Appellants necessarily knew that they had theretofore promised to pay $1,000 for the new house and garage when they executed the note and contract promising to pay $2,500 for the improvements to be

made on the old house and that no provision was made in such contract for the payment of the said former sum. Appellee showed that the actual cost of the labor and material used in making the repairs and improvements on the old house was, as hereinbefore stated, approximately $1,850, and that the amount necessarily expended.in paying taxes, insurance, etc., incident to securing a loan for appellants to take up said mechanic's lien contract, was $437.44. Appellants do not deny that the improvements made on the old place cost the sum charged therefor as aforesaid nor that appellee with their consent and approval actually expended the amount so claimed in payment of taxes and other expenses. In thts connection the jury found in answer to the eighth .issue that appellee did not convert any part of the $2,500 loan ultimately secured to its own use and benefit. While this finding is in general terms, the effect thereof is that the entire sum received as proceeds of said loan was applied by appellee in the manner desired and authorized by appellants at the time.

The parties to a contract may at any time by mutual consent or agreement substitute a new contract either in whole or in part for an existing one. The power to modify a prior existing contract is coextensive with the power to enter into such a contract in the first instance and is an incident of contractual capacity. 10 Tex. Jur. p. 356, § 203; Groce v. P. B. Yates Machine Co. (Tex.Com.App.) 288 S.W. 161; Rhoads Drilling Co. v. Allred, 123 Tex. 229, 70 S.W.(2d) 576, 583, pars. 8 and 9; Hammonds v. Flewellen (Tex.Civ.App.) 48 S.W.(2d) 813, 815, par. 2. The note and mechanic's lien contract for the improvement of the old house were by their own terms inconsistent with payment of $1,000 or any other sum out of the loan procured on said property before the payment of the cost of the improvements stipulated therein. The application by mutual consent of appellants and appellee of a part of the loan when actually procured to clearing of the property of tax liens, insuring the same, etc., was wholly inconsistent with the application of such proceeds first to the discharge of the note sued on.. So far as the application of the proceeds of the contemplated loan to discharge the note sued on was concerned, the original agreement with reference thereto was, at the time of the execution of said second mechanic's lien contract, wholly executory and subject to modification or abrogation by mutual consent or agreement, express or implied. We think that the action of the parties in the premises as above recited amounted, by necessary implication, to a mutual agreement eliminating the original oral representation or agreement that the new house and garage should be free from lien or indebtedness as .found by the jury and relied on by appellants to defeat a recovery on the note and lien sued on herein.

The judgment of the trial court is affirmed.