**C. C. CARROTHERS, Plaintiff,**

v.

**STANOLIND OIL AND GAS COMPANY, Defendant.**

**Civ. A. No. 1378.**

United States District Court
N. D. Texas, Abilene Division.

Sept. 14, 1955.

Scarborough, Yates, Scarborough & Black, Abilene, Tex., for plaintiff.

L. A. Thompson, Tulsa, Okl., James K. Smith, Fort Worth, Tex., Upton, Upton, Baker & Griffis, San Angelo, Tex., for defendant.

ESTES, District Judge.

In this case both parties have moved for summary judgment and conceded that there is no genuine issue as to any material fact. Thus, it is for the Court to decide the case as a matter of law. 3 Barron and Holtzoff, Federal Practice & Procedure, Sec. 1239. The material facts are that on July 16, 1948, plaintiff executed an oil and gas lease to prior assignors of defendant, Stanolind Oil and Gas Company, (hereinafter referred to as Stanolind) on the "unless" form of lease; that Stanolind assigned a portion of this lease by "farmout agreement" obligating its assignee to drill on a portion of the leased premises, and that Stanolind's assignee had commenced actual drilling of a well in search of oil and gas upon a portion of the leased premises before the anniversary date of the lease, July 16, 1953, rentals having been paid prior to that time to maintain the lease in force. Shortly before July 2, 1953, plaintiff inquired of defendant, Stanolind, whether Stanolind was going to pay the rentals provided to be paid on July 16, 1953, in order to maintain the lease in force. On July 2, 1953, Stanolind's rental payment department employee sent a letter to plaintiff stating that "we wish to advise that this

rental payment will be made within the next few days", being unaware that Stanolind's assignee under the farmout agreement had already commenced drilling a well on the lease and that such drilling operation was intended to continue through and after July 16, 1953. Upon learning that drilling was being conducted, Stanolind notified plaintiff, lessor, by letter dated July 8, 1953, that it would not pay the rentals. Plaintiff thereafter made demand on defendant, Stanolind, to pay the same and brought this suit for the sum of $5,736.00, being the amount of delay rentals provided for in the lease, basing such suit solely on Stanolind's letter of July 2, 1953. Stanolind's defense is grounded on two contentions: first, that its letter of July 2, 1953, was not a promise to pay the rentals, but merely an answer to plaintiff's inquiry manifesting Stanolind's intention to pay the rentals for the purpose of maintaining the lease in force, being unaware that the lease would be maintained in force by drilling on the leased premises then in progress, which would and did continue through July 16, 1953; second, that if Stanolind's letter was tantamount to a promise to pay the rentals, that it was not bound thereby because that promise was made without consideration.

These facts being established, the Court concludes that Stanolind's "unless" lease did not obligate it to pay the rentals, that this lease was maintained in force by drilling thereon on and prior to July 16, 1953, the rental payment date in question; that even though Stanolind's letter of July 2, 1953, be considered as a promise to pay, it was without consideration; and that plaintiff is not entitled to judgment, but defendant, Stanolind, is entitled to summary judgment.

Conceding that he has no authority directly in point to support his contention, plaintiff takes the position that defendant, in writing the letter of July 2, 1953, elected to exercise the "option" to pay delay rentals; that the election was irrevocable and therefore Stanolind, regardless of the drilling operations, became bound and obligated to pay the delay rentals. He cites general authority on the broad proposition that "by the weight of authority an election (under an alternative contract) once made is final and irrevocable." See 17 C.J.S., Contracts, § 455, p. 936; Twaits v. Pennsylvania Railroad Co., 77 N.J.Eq. 103, 75 A. 1010; 12 American Juris. Sec. 322, p. 876.

The soundness of abstract principles of contract law supported by the authorities cited, supra, is not questioned; however, their materiality to the case at bar does not appear.

Assuming the letter of July 2nd constituted a promise by Stanolind to pay delay rentals—a matter which is by no means beyond reasonable dispute—what consideration did Stanolind receive that it was not already entitled to receive, and what did plaintiff give up which he was not already bound to give up as the result of the drilling operations then being conducted? The answer must be: nothing.

In dealing with a promise to pay additional compensation in order to induce the promisee to do that for which he was already bound under his existing contract, the Supreme Court of Texas in Jones v. Risley, 91 Tex. 1, 32 S.W. 1027, 1030, said:

"As we view the case, under the principles above discussed, the antecedent verbal agreement must be conclusively presumed to have been abandoned at the time of entering into the subsequent written contract, and its prior existence afforded no excuse or justification for Risley's refusal to comply with the directions of the engineer, as he agreed to do in the written contract between him and Jones & Carey; and, *since the subsequent promise of Jones & Carey to pay him extra compensation was for the purpose of inducing him to do what he was already bound to do under such written contract, there was no consideration to support same."* (Emphasis supplied.)

To the same effect are Stone v. Morrison & Powers, Tex.Com.App., 298 S.W. 538 (Opinion Adopted, Sup.Ct.); American National Insurance Company v. Teague, Tex.Com.App., 237 S.W. 248 (Opinion Adopted, Sup.Ct.); 12 American Jurisprudence Sec. 412, p. 990, and authorities therein cited, and 10 Texas Jurisprudence, p. 139, and authorities therein cited.

In the light of the foregoing authorities, it appears to the Court, that in view of the drilling operations, Stanolind received nothing more than that to which it was already entitled, to-wit: an extension of the term of the lease for one year from July 16, 1953, and plaintiff gave up nothing more than that which he was already bound to give up, to-wit: an extension of the leasehold estate for the same period of time.

The applicability of the familiar principle of Jones v. Risley and related authorities, supra, becomes even more apparent when consideration is given to the character of leasehold estate which is created by the ordinary form of "unless" type oil, gas and mineral lease, such as is involved in the case at bar. Basically, this lease creates an estate on common law limitation as distinguished from an estate on condition subsequent. 5th Institute on Oil and Gas Law and Taxation, S.W.Leg.Fnd. p. 9, citing W. T. Waggoner Estate v. Sigler Oil Co., 1929, 118 Tex. 509, 19 S.W.2d 27; Cox v. Miller, Tex.Civ.App.1944, 184 S.W.2d 323. Its nature is generally defined in Summers, Oil and Gas, Per.Ed. Vol. 2, Sec. 339, p. 223, as follows:

"An important distinction in the legal relations between Lessor and Lessee under the *drill or pay* type of lease and the *unless* type of lease which has been heretofore mentioned, is that under the drill or pay lease the Lessee expressly promises to drill or pay; but under the unless lease the contract merely provides that if the Lessee does not drill within a stipulated time the lease is void unless he pays. There being no promise on part of the Lessee under the *unless* lease to pay the delay rental there is no duty to pay, and an action consequently cannot be maintained to recover it. *The provision for payment is looked upon as merely stating a condition upon which, in absence of drilling, the lease may be continued or terminated.*" (Emphasis supplied).

One of the leading authorities in Texas as to the nature of the "unless" form of oil and gas lease, and particularly the effect of the commencement and completion of drilling operations as bearing upon the obligation to pay delay rentals, is Texas Co. v. Davis, 113 Tex. 321, 254 S.W. 304, 255 S.W. 601, wherein the Court held as follows:

"*Since the payment of rentals authorized merely delay in drilling, the clause concerning it was no longer operative, once a well was duly commenced and completed.* Nothing could have been further from the minds of the parties, as disclosed by the entire writing, than that after the land was found to contain oil or gas, in paying quantities, it must remain wholly unproductive in the event the lessee elected to pay $10 per annum. Rorer Iron Co. v. Trout, 83 Va. [397] 409, 2 S.E. 713, 5 Am.St.Rep. 285.

"The clause had two purposes essentially for the benefit of the lessee. The first purpose was to secure an option to make the small payments in lieu of development for a term beyond the two years. The second and perhaps the chief purpose was to make entirely clear that the lessee was not to be required to pay rentals after he had sunk a well and decided the enterprise could not be made profitable. The Law of Oil & Gas, 18 Michigan Law Review, pp. 655, 660; Parish Fork Oil Co. v. Bridgewater Gas Co., 51 W.Va. 583, 42 S.E. 655, 59 L.R.A. [566] 571. *The clause was plainly not intended to defeat the dominant purpose of both contracting parties, which was the production of min-*

*erals for mutual profit."* (Emphasis supplied.)

The San Antonio Court of Civil Appeals, citing Texas Co. v. Davis, supra, commented upon the matter recently in Morriss v. First National Bank of Mission, Tex.Civ.App., 249 S.W.2d 269, 279 (no writ) in the following language:

"The privilege to pay rentals ordinarily ceases upon commencement of operations or production, depending upon the words of the lease."

The Texarkana Court of Civil Appeals, in Davis v. Bussey, Tex.Civ.App., 298 S.W. 656, 657 (writ of error refused), discussed the nature of delay rental provisions in particularly significant and appropriate language as follows:

"The payment stipulated for was not, 'strictly speaking,' rental, 'but simply a sum for the payment of which the lessee acquires the right to extend his option beyond the time provided for the beginning of the drilling of a well.'"

The lease involved in the case at bar, which is in standard terms, provides in paragraph 4 (in part) that:

"If operations for drilling are not commenced on said land *on or before* one year from this date, this lease shall then terminate as to both parties, unless on or before such anniversary date lessee shall pay or tender to lessor or to the credit of lessor in the First National Bank of Stamford, Texas * * * the sum of $5,736.00 (herein called rental) which shall cover the privilege of deferring commencement of operations for drilling for a period of 12 months. In like manner and upon like payments or tenders annually, the commencement of operations for drilling may be further deferred for successive periods of 12 months each during the primary term."

Under the plain terms of the lease, when considered in the light of the foregoing authorities, it is apparent that Stanolind, because of its assignees' drilling operations, was entitled to continue the lease in effect for a period of one year from July 16, 1953, without the payment of additional consideration therefor, and that its promise, if any, to pay the same was without consideration.

Accordingly, plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted.