**HUGHES et al. v. BUCHANAN et al.[*]**
(No. 1171.)

(Court of Civil Appeals of Texas. Beaumont. Jan. 30, 1925. On Rehearing Feb. 26, 1925. Further Rehearing Denied April 8, 1925.)

1. **Logs and logging** ⊘3(15)—**Vendor's petition held to state cause of action.**

Petition by vendor for breach of contract for sale of timber *held* to state cause of action.

2. **Appeal and error** ⊘1061(4)—**Judgment based on verdict erroneously directed cannot be affirmed for error in overruling demurrer.**

That trial court erred in overruling defendants' general demurrer to petition is no ground for affirming judgment based on verdict erroneously directed for defendant.

3. **Specific performance** ⊘95—**Vendor held not entitled to specific performance of contract for sale and purchase of standing timber where evidence shows no obligation to pass title.**

Specific performance of a contract for the sale and purchase of standing timber will not be decreed in the suit of the seller, where the evidence discloses that the seller never intended to have title pass to the purchaser.

4. **Logs and logging** ⊘3(15)—**Measure of damage for breach of purchase and sale contract of standing timber is loss of profits.**

In seller's action for breach of contract for purchase and sale of standing timber, the measure of damage is loss of profits.

5. **Logs and logging** ⊘3(15)—**Evidence tending to show seller's good faith held to present issue for jury as to disbursements and expenses.**

In action for breach of contract, evidence tending to show that the seller of standing timber in good faith incurred expenses and disbursements in attempting to comply with his contract *held* to present a question for the jury.

Appeal from District Court, Nacogdoches County; L. D. Guinn, Judge.

Action by B. F. Hughes and another against J. H. Buchanan and another. From the judgment, plaintiffs appeal. Reversed and rendered.

A. D. Lipscomb, of Beaumont, Seale & Denman, of Nacogdoches, Mooney & Smith, of Woodville, and V. E. Middlebrook, of Nacogdoches, for appellants.

Coleman & Lowe, of Woodville, and S. M. Adams, of Nacogdoches, for appellees.

WALKER, J. Omitting formal parts, appellants' petition was as follows:

"Now comes B. F. Hughes and K. W. Lee, both of whom reside in Tyler county, Tex., hereinafter called plaintiffs, complaining of J. H. Buchanan and M. V. Wynne, both of whom reside in Nacogdoches county, Tex., hereinafter called defendants.

"I. Plaintiffs represent to your honorable court that on or about the 25th day of January, A. D. 1923, the said parties plaintiff and defendant made and entered into a contract in writing, which said contract was duly executed by all parties thereto, and which said contract is attached hereto, marked 'Exhibit A' and made a part hereof.

"II. Plaintiffs further represent that in accordance with the terms of said contract, and which said contract was to be performed in Tyler county, Tex., they secured the following tracts of timber on the following described tracts of land in Tyler county, Tex., all of which was in the territory embraced within the terms of said contract, to wit: (Here follows description of timber.)

"III. Plaintiffs further represent that in pursuance of said contract and agreement and within the time specified therein, they secured the title to said timber in accordance with all the terms required in said contract, and offered to the said defendants the title thereto, and that the said defendants had contracted and agreed to pay to the plaintiffs the sum of $4.25 per thousand feet therefor, and that in securing the title to said timber and in the performance of said contract, the said plaintiffs had paid large sums of money to secure the title to said timber to the various owners thereof, and also had spent a large sum of money, time and labor in estimating and perfecting the titles thereto, all of which aggregated the sum of $5,000.

"IV. Plaintiff would further show to your honorable court that the value of said timber, as per contract price, was $29,485, and which said sum the said defendants promised and agreed to pay to these plaintiffs in cash, all of which they had failed and refused to do, to plaintiffs' damage in the sum of $12,500.

"V. Plaintiffs further show that all of said timber was in the territory described in the contract hereto attached, and that the same was the kind and character of timber contracted for, and all of the terms and conditions of said contract have been fully complied with by the said plaintiffs, and if it should be made to appear that the plaintiffs have failed to comply with any part of said agreement, that their failure so to do was caused by the acts of the defendants in failing to carry out their part of said contract.

"The premises considered, plaintiffs pray for

---

⊘For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction June 3, 1925.

citation to the defendants and each of them. and that upon a hearing of this cause that they have judgment for their damage, cost of suit, and such other and further general and special relief as they may be entitled to, in law and in equity."

The contract referred to in the petition:

"The State of Texas, County of Tyler.

"This contract entered into by and between K. W. Lee and B. F. Hughes of Tyler county, Texas, hereinafter called parties of the first part, and J. H. Buchanan and M. V. Wynne of Nacogdoches county, Texas, hereinafter called party of the second part, witnesseth:

"I. The parties of the first part for the consideration hereinafter stated, agree to deliver and sell to the party of the second part, seven million feet of timber of the dimension of 10 inches and up, standing. growing and being upon the following described tracts, or parcels of land in Tyler county, Texas, to wit: (Here follows description of land.)

"II. The timber, which the party of the first part herein agrees to convey, consists of both pine and hardwood timber, save and except the pine timber on the Ogden tract only, and the party of the first part claims, and herein agrees to deliver an aggregate stumpage on said tracts of land, of seven million feet as estimated by said party of the first part. The party of the second part agrees to pay the sum of five dollars per thousand feet for each and every thousand feet of timber standing, growing, and being upon the above-described tracts of land, which the party of the first part may be able to deliver them, through a good merchantable chain of title. And the party of the second part agrees that the estimate placed on said timber by the party of the first part is accepted, provided, however, that the party of the second part, before finally closing the deal, may within the time hereinafter provided, have the right to have the above tracts of timber estimated by estimators of their own selection and if the estimate so made by the party of the second part does not come up to, and agree with the estimate of the party of the first part, then, in that event, timber shall be calipered jointly by persons representing both of the parties hereto, unless without the necessity of calipering, mutually agree upon an estimate.

"III. The money payment for the timber herein contracted shall be cash, based upon the estimate as herein provided for. The party of the second part shall have 30 days from this date in which to satisfy themselves as to the correctness of the estimate claimed herein by the party of the first part, and if no objection to the estimate herein stated by the party of the first part has been given within the time the terms of this contract shall be carried out and fulfilled, the purchase price to be based upon an estimate of seven million feet; however, if the party of the second part within the time herein first mentioned, shall fail to agree, and so notify the party of the first part, to the estimate claimed by said party, then said party of the second part shall have 30 additional days time within which to caliper said timber jointly with the first party hereto.

"IV. It is agreed by both parties hereto,

that if for any reason the title owned and held and offered by the party of the first part, to any part, or fractional part, of the timber herein contracted, shall fail to be merchantable, that, then, in that event, the party of the first part shall deliver to the party of the second part, the proportion the whole acreage bears to the total estimate. In other words, failure of a part of title herein contracted, shall not be held to relieve any party hereto, from obligation to carry out the terms of this contract on such of the title as may be found to be merchantable.

"V. Party of the first part hereby agrees to give and grant to the party of the second part, ten years free time in which to cut, fell and remove the timber herein contracted, from off the land on which it stands, or may be, with the privilege on the part of the second party, of extending the time, for a period of five years, by paying for such extension in advance, the sum of fifty cents per acre per annum, together with all taxes accruing.

"VI. The party of the first part agrees to submit to the party of the second part, or its legal representatives, full and complete abstracts of title, and the party of the second part is hereby given full rights of egress and ingress in and over, and upon the lands herein mentioned with trams, tramroads, wagons, teams, and any other logging equipment necessary for the removal of said timber, and the party of the second part shall have ―――― days, as the delivery of said abstracts of title, in which to examine the same, and if the titles are found merchantable, as the term merchantable is found defined by the Supreme Court of this state, the deal shall be closed by the party of the first part executing proper conveyances of the properties herein contracted, to the party of the second part. But if the titles are not merchantable, then, the party of the second part shall point out, or cause to be pointed out, in writing, to the party of the first part, its objections to said titles, and thereupon, the party of the first part shall have a reasonable time, of not less ―――― if necessary the ―――― days in which to meet such objections, and cure the titles, and upon doing so, the deal shall be closed as hereinbefore stated.

"VII. The party of the second part, upon the signing of this contract, agrees to place, and hereby does place, the sum of two thousand five hundred dollars in escrow in the Citizens' Guaranty State Bank of Lufkin, Texas, to. be by said bank held, and paid out as in this contract may be provided, and a copy of this contract shall be furnished said bank for its information, and its guidance in the handling of said. money. Upon the closing of this contract, said earnest money shall be paid to the party of the first part by said bank, as a part of the total purchase price, providing, however, that if. the party of the first part shall perform its part of the contract, or offer to do so, their duty and obligation is herein fixed, and if the party of the second part should fail and refuse to perform this contract, within the time, and in the manner as herein provided, then, in that event, the earnest money herein mentioned, shall be forfeited, to the party of the first part, and the bank hereinbefore mentioned, as deposi-

tory, is hereby authorized and directed to pay said earnest money to the party of the first part as liquidated damages, and thereupon, this contract shall become null and void, though nothing in this provision shall be construed to mean that either party hereto, may not, if they so elect, be entitled in law to specific performance of this contract.

"VIII. As an additional consideration, and part of this contract, the party of the second part hereby authorizes, and agrees, to buy any additional timber adjoining, or near, or in the same or practically the same territory, as the timber herein contracted, is situated, which the party of the first part may be able to purchase, or contract for, and agrees to pay therefor, the sum of four and $25/100$ ($4.25) dollars per thousand feet; the titles to the same to be submitted and passed upon in like manner, as the titles to the tracts herein contracted are to be passed upon. And the deal, or deals for such timber to be closed upon the same terms as in this contract provided. In other words, unless specially agreed upon in writing, such additional timber purchased, by the party of the first part, and purchased from the party of the first part, by the party of the second part, shall be subject to the same terms and conditions, except as to price, as are provided in this contract, so far as it relates to the three tracts herein described. The party of the second part agrees not to purchase from any other person, timber in this territory save and except that which they have already purchased, and are purchasing, from S. H. Reid and R. W. Tubb, or their representatives, a list of which is furnished the party of the first part, and on the other hand, the party of the first part hereby agrees not to sell any timber purchased by it, to any other party, unless, or until the party of the second part shall refuse to buy same, in writing, or unless, in writing the parties hereto mutually agree otherwise.

"IX. The time limit for which the right of purchase of additional timber under the terms of this contract, shall extend and be binding on both parties hereto, for a period of four (4) months, from the date hereof, and any timber placed under contract during that time, shall be handled in the same manner as the time hereinbefore is to be handled.

"X. It is agreed that this contract may be replaced by an additional contract of the same import with any changes that either party may desire, provided that such changes, if any, may not change the general import of this contract      [Signed] K. W. Lee.

            "B. F. Hughes.

            "J. H. Buchanan.

            "M. V. Wynne."

Appellees answered by general demurrer and general denial and by cross-action to the effect that appellants had contracted to buy for their account certain timber, and by failing to do so had damaged them in the sum of $12,500, and, further, that they had paid appellants certain sums of money on note executed by them in the payment for the first three tracts of land bought by them, which appellants refused to recognize as credits on the note. Appellees tendered the balance due on the note, as claimed by them, and prayed that the note be canceled.

The evidence showed that appellees had the timber on the first three tracts estimated long after the contract had been closed, the title delivered, and the consideration paid. However, notwithstanding they were to accept and pay for all timber of the dimension of 10 inches and up, they instructed their estimator to scale pine 12 inches and up and hardwood 14 inches and up. Naturally, a shortage was shown as against appellants' estimate. When appellants refused to allow the shortage, the issue was raised that appellees, because of that fact, wrongfully breached that portion of the contract by which they were to accept and pay for other timber bought and contracted for their account by appellants; also, the evidence raised the issue that appellants had bought and contracted for the timber set out in their petition, and in so doing had expended valuable time, put up forfeit money, and expended money on abstracts and in examination of titles. From the evidence on these issues the jury could have found that appellants had expended and lost a substantial sum of money, and could have fixed a definite sum. After the breach of the contract, appellants made no further effort to tender appellees abstracts of title to the land that they had bought or to tender them a merchantable title to the land. On the trial they did not show that they could have tendered such a title, nor that the persons from whom they were buying the land owned such a title. They did tender an abstract to one tract of land, but the title was refused by appellees on good grounds, and no wrong was committed in refusing to accept and pay for the title tendered. Appellants showed with reasonable certainty the amount of timber contracted for by them under the contract, the amount they were to pay the owners for the timber, and the amount appellees had contracted to pay at the rate of $4.25 per M; but they did not show what it would have cost to make appellees a tender of a merchantable title, as called for by the contract. The trial was to a jury. On conclusion of the evidence the trial court instructed a verdict against appellants on their claim for damages for breach of contract, but submitted to the jury the issues raised by appellees' cross-action as to the balance due on their note. These issues were found in appellants' favor, and judgment entered accordingly.

### Opinion.

[1,2] Appellants' petition was not subject to a general demurrer. Both on the actual damages for expenses incurred in their effort to execute the contract, and for damages for failure of appellees to accept and pay for the timber, appellants' petition stated a

cause of action. They pleaded the amount of timber bought by them and its value at the contract price in the sum of $29,485. Then they pleaded their damages in the sum of $12,500. The reasonable intendment of these allegations was that the timber cost the difference between its value to appellants at the sale price to appellees and their damages, which was $16,985. The allegations as to the breach of the contract, while very indefinite and uncertain in terms, did not render the petition subject to a general demurrer. No damages could have accrued in appellants' favor except on a breach, and as they were suing for damages because of a default on appellees' part, the reasonable intendment was that the contract had been breached. Gulf Production Co. v. Bonin (Tex. Civ. App.) 242 S. W. 776. For the same reason, the allegation of damages because of time and money, etc., spent perfecting the title, are not subject to a general demurrer. Anyway, the court did not sustain appellees' general demurrer, and therefore we cannot now sustain the contention that the instructed verdict should be sustained on the ground that the petition was bad and that the general demurrer should have been sustained.

[3] Nor can the instructed verdict be sustained on the ground that appellants had provided by contract the remedy in case of a breach. The escrow money of $2,500 clearly related to the first three tracts, and had no relation whatever to the timber to be contracted for by appellants, nor did the remedy by specific performance have any relation whatever to the timber to be contracted for. By the terms of the contract itself, this remedy related to the three tracts, but under the contract appellants had no remedy as against appellees for specific performance for the timber which they had contracted to purchase. "It is elementary that in order to obtain the remedy of specific performance as a vendor, the plaintiff must be able to deliver title." 36 Cyc. 393. Appellants had no title, nor was it the intent of the contract that they should have title. Their obligations were fulfilled when they had made a "contract for" the timber and tendered the character of title called for.

[4] Appellants' only cause of action was for damages for breach. But they failed to make out a case for the jury on their claim for damages for the difference between the sale price to appellees and the cost to them of the timber described in their petition. Their damages, if any, were the difference between the sums that appellees were to pay for the timber and the cost to appellants of delivering a merchantable title. It was not enough to show what sums were to be paid the claimants of the timber. The evidence should have gone further and shown the additional cost of delivering the character of

271 S.W.—11

title called for. This was not done. Again, as appellants have based their cause of action on the refusal of appellees to accept specific tracts of timber, they should have gone further and shown that they were acquiring from the claimants of those specific tracts of timber merchantable titles. The issue was not even raised that the claimants of the timber had such a title, nor that appellants could have tendered appellees the character of title called for. Therefore it is our conclusion that the trial court did not err in refusing to submit to the jury any measure of damages growing out of the difference between the cost price of the timber described in their petition and its sale price, or, in other words, loss of profits.

[5] But the issue was raised that appellants were trying in good faith to execute the contract, and were in due discharge of their obligations to appellees at the time the contract was wrongfully breached, and they made a reasonable showing of expenses incurred by them in their efforts to perform their contract obligations. This issue should have gone to the jury, and because of the court's action in instructing the verdict on this theory of the case, this judgment must be reversed and the cause remanded for a new trial.

There was no error in submitting to the jury the issue of the balance due on the note. While appellants did not raise that issue by their pleadings, appellees did, and asked for a cancellation of the note on a tender of what they claimed to be the balance due.

Reversed and remanded.

## On Rehearing.

In reversing this case we held that the trial court erred in instructing the verdict against appellants on their allegations of damage for expenses incurred by them in attempting to execute the contract. We held that they had wholly failed to make out a case of lost profits. Against this holding, appellants have filed no motion for rehearing. But while complaining of our holding, appellees now come by motion and ask us to grant a rehearing, proposing to pay all sums that could be adjudged against them under our view of the law. In connection with this motion, and as a part thereof, they show that appellants were caused to lose the following sums by reason of the breach of the contract, and they insist that these amounts are all that the record shows:

| | |
|---|---:|
| Forfeited to Sheffield | $162 50 |
| Forfeited to Shepherd | 85 00 |
| Forfeited to Fannie Weaver | 100 00 |
| Total | $347 50 |

Though appellants were requested by the court to answer this motion, and though they have done so, they do not controvert the correctness of these figures taken by appellees

from the record, but direct their answer to another question. Thus they say:

"By breaching the contract on collateral grounds, defendants relieved plaintiffs of what, otherwise, would have been the necessity of perfecting title. It was then only necessary for plaintiffs to show what it would have cost them to perfect the titles and discharge the other expenses necessary to have been incurred; the difference was what plaintiffs were entitled to recover. This was shown by the general allegations as to the loss of profits to which no special exception was directed."

As it is our construction of the evidence that appellants did not discharge the burden that this proposition now advanced imposes upon them, it follows that a judgment was correctly instructed against them on their count for lost profits.

It is our order that appellees' motion for rehearing be granted, and that appellants recover of them the sum of $347.50, together with all costs in this behalf expended, both in the lower court and in this court.

This order does not disturb appellants' judgment against appellees in the sum of $673.15, or the balance due on notes; but that part of the judgment is in all things affirmed as in the original opinion.