## TEXARKANA NAT. BANK v. HUBBARD.
### No. 3256.

Court of Civil Appeals of Texas. Beaumont.
Feb. 23, 1938.

Rehearing Denied March 9, 1938.

390

King, Wheeler & Fulton, of Texarkana, for appellant.

O. B. Pirkey, of New Boston, for appellee.

WALKER, Chief Justice.

On the 3d day of September, 1927, John H. Hubbard, appellee, on the recited consideration of $5,000 paid him by R. M. Hubbard, his brother, conveyed to R. M. Hubbard his undivided interest in certain property described in the instrument; though in form of deed this instrument was intended by the parties as a mortgage to secure a certain promissory note due by grantor to grantee. This note was renewed on the 19th day of October, 1931, by John H. Hubbard executing to R. M. Hubbard a new note for the sum of $6,312.

R. M. Hubbard died on the 6th day of November, 1934. By his will he nominated and appointed appellant, the Texarkana National Bank, his executor and trustee. The will was duly probated; appellant was duly appointed executor and confirmed in its right as trustee, with the powers granted it under the will.

After appellant had administered the estate for more than a year and had paid and satisfied all claims against it as executor, the surviving widow of the deceased instituted partition proceedings against all parties interested in the estate, including appellee and appellant. Judgment was entered in that proceeding awarding the widow one half of the community estate belonging to her and her deceased husband.

The other half of the community estate, with the separate property of the deceased, was awarded to appellant for final administration under the terms of the will.

By the terms of the will the earnings of the property of the deceased were devised to his widow during her life, and at her death passed to his brothers and one of his nieces. Also the will created a trust fund of $5,000 for the benefit of his brothers and sisters in the event they should be in actual need.

When R. M. Hubbard died he had in his possession the note of appellee described above, indorsed "2/13/34—'32—'33 rent $225.00, 7/12/34—1/10 Gw rents $101.36." After his death the note passed into the possession of appellant as executor, awarded to it in the partition proceedings, and appellant indorsed upon it the following credits:

"3/15/35—$315.72

"6/4/35—1/10 rental ck Hubbard Farm—$88.69.

"5/31/36—$106.80

"5/30/36—$50.00."

After the entry of the judgment of partition, appellant demanded of appellee in writing payment of the note; appellee made no reply to these written demands, made no payment on the note, and made no claim to appellant, that the note had been satisfied.

On the 19th day of October, 1931, the day the above-described note was executed, R. M. Hubbard executed and delivered to appellee the following instrument in writing:

"R. M. Hubbard
"Attorney-at-Law
"New Boston, Texas, Oct. 19th, 1931.
"Mr. J. W. Hubbard,
"Sweetwater, Texas
"Dear John:
"This will advise you and others who may be interested that if you secure an agreement from all of your creditors to cancel your indebtedness to them, I will join in cancelling your indebtedness to me.
"Yours sincerely,
"R. M. Hubbard."

On that date appellee was in business in Sweetwater, Tex., and was hopelessly and notoriously insolvent. At the time he executed the renewal note and R. M. Hubbard executed and delivered to him the above instrument, he advised R. M. Hubbard and his brother James Hubbard, who was with them, that he could not pay his

debts and intended to go into bankruptcy. He also advised them that, if his relatives would release him from their claims against him, his other creditors would do the same. At that time he owed the First National Bank of Sweetwater, Tex., $2,800, and it had given him the following letter:

"The First National Bank
"Sweetwater, Texas
"October 13, 1931.

"Mr. John H. Hubbard,
"Sweetwater, Texas.
"Dear Sir:

"Answering your verbal inquiry; wish to advise that if you get an agreement from all of your creditors to cancel your indebtedness to them, we will join them in doing the same with your indebtedness to us.

"Yours truly,
"Clyde B. Payne, Cashier."

On the faith of that letter and of appellee's representation that his other creditors would release him, R. M. Hubbard gave him the letter copied above, and a similar letter proposing to release a claim of $1,600 due by him to a mercantile business at Maude, Tex., owned and operated by appellee's three brothers, R. M., James, and T. A. Hubbard; James and T. A. Hubbard joined R. M. Hubbard in the execution of the letter. After receiving these three letters, appellee called upon all of his creditors, showed them these letters, and secured from all of them written releases. After his creditors had joined in releasing him from their claims, all of them except R. M. Hubbard canceled and surrendered to him all evidence of indebtedness held by them against him.

In the partition proceedings appellee was served with notice of the widow's petition, but had no notice that his note was listed as a part of the community assets of the estate, and would be considered by the court as a part of the estate in entering the partition judgment. On the 2d day of July, 1935, appellee made application to appellant for aid to be paid out of the $5,000 trust fund, and in his application made the statement that he was in actual want and in need of the assistance asked for, and that he had no property to which he could resort in his necessity.

When appellee refused to pay the note given by him to R. M. Hubbard, appellant filed this suit on the 11th day of November, 1936, praying for judgment against appellee for the amount of the note and for foreclosure of the lien against the land de-scribed in the instrument executed in 1927, and, in the alternative, for title and possession of the land. Appellee answered by demurrers, general and special, general denial, and by special plea of the facts above stated—the execution and delivery to him of the letter by R. M. Hubbard, and the release by all the creditors of their claims against him, and the time and money spent by him in securing these releases—as constituting a release of the note sued upon. By its supplemental petition appellant pleaded demurrers, general and special, general denial, and that appellee was estopped to deny liability on the note: (a) By reason of the fact that it had been awarded to appellant in the partition proceedings, which judgment constituted res judicata of appellee's liability; and (b) by his application for aid from the trust fund. On trial to the court without a jury, judgment was in favor of appellee canceling the note, and for title and possession of the land conveyed by the instrument of 1927, and for certain rents claimed in his answer. No conclusions of fact or law were filed. Appellant duly prosecuted its appeal to the Texarkana Court of Civil Appeals; the case is on our docket by order of transfer of the Supreme Court.

### Opinion.

Appellant contends, first, that it was not the intention of appellee or R. M. Hubbard that the note in issue should be can-celed and surrendered, but on the contrary that appellee should remain liable on the note. This contention is denied. An examination of the statement of facts shows that R. M. Hubbard, appellee, and his other brothers dealt in perfect good faith in the execution of the instruments of release. R. M. Hubbard himself wrote the instrument signed by him, and also the instrument signed by him and his two brothers; he wrote these instruments that appellee might exhibit them to his other creditors. The record does not rebut the conclusion that appellee accepted these instruments and acted upon them in good faith, believing that he would be released from his indebtedness to his brothers when all his other creditors likewise released their claims; nor does the record rebut the conclusion that he has acted at all times on his construction of the contract that he was released from this note. While there is evidence to the contrary, it is also our conclusion that R. M. Hubbard never attempted to rescind his contract with appellee, but at all times prior

to his death considered himself bound by his contract of release.

Appellant's second point is that the contract of release was without consideration; that is also denied. It is the law, 36 Tex.Jur. 801, that "to be operative, a release, like any other contract, must be supported by a valid consideration." But, as said by the same authority, page 805: "The amount of consideration given for a release need not be adequate if it has some value in the eyes of the law; any amount, however slight, will be sufficient if it was accepted or agreed to by the person executing the release." The R. M. Hubbard contract with appellee was on a valuable consideration:

(1) After receiving the letters from R. M. Hubbard, appellee called upon his creditors and secured their releases; in doing this he spent several days' time and about $100 in money—this he would not have done but for the written promise made him by R. M. Hubbard. In 10 Tex.Jur. 116, it is said: "Ordinarily it is immaterial from whom the consideration moves or to whom it goes; it may be given either by the promisee or by some other person, and either to the promisor or to some other person." Same authority, page 122: "A consideration sufficient to support a contract may be either a benefit to the promisor or a detriment to the promisee."

The R. M. Hubbard's letter was a contract of release, on a valuable consideration, and discharged the note. In 36 Tex.Jur. 819, it is said: "A valid release is an absolute bar to any right of action growing out of the obligation discharged, and it conclusively estops the releasor from making further effort to enforce the claim released."

(2) R. M. Hubbard's letters to appellee were in the nature of an offer of composition to all of the creditors, and their acceptance of his offer constituted a valuable consideration. 5 R.C.L. 870, 871: "Such an agreement, if entered into by a debtor with a number of his creditors, each acting on the faith of the engagement of the others, will be binding on them, for each in that case has the undertaking of the rest as a consideration for his own undertaking."

(3) Considered merely as an offer by R. M. Hubbard to the other creditors, it was made for the interest and benefit of appellee—a third party contract—and, when accepted by the other creditors, appellee was entitled to its benefits. Breaux v. Banker, Tex.Civ.App., 107 S.W.2d 382.

We overrule appellant's propositions of estoppel. (a) In the partition proceedings appellee was not advised that appellant and the widow were claiming his note as a part of the community assets under administration. He did nothing to deceive appellant as to the character and nature of this note. Appellant dealt with it as the executor of the estate, and took it subject to all defenses existing between appellee and R. M. Hubbard. (b) Appellee was not estopped—at least, as a matter of law—by his application for relief from the trust fund held by appellant for administration under the terms of the will. The note in issue had been fully discharged; the indebtedness evidenced by the note had been extinguished. Appellee owed R. M. Hubbard and his estate nothing. The release was a tripartite agreement—between R. M. Hubbard, appellee, and all his other creditors. All dealings between R. M. Hubbard and appellee in relation to the note must have been on the basis of good faith between them and the other creditors, who had released their claims on the promise of R. M. Hubbard to release his.

We quote as follows from 5 R.C.L. page 871: "Accordingly the rule is well settled that a composition is valid, and when executed operates as a total discharge of the debtor as to all who share thereunder, and it is a further rule that a subsequent promise by the debtor to pay the balance due is invalid unless supported by a new consideration, a discharge by voluntary composition being distinguished in this respect from a discharge by operation of law, as in bankruptcy proceedings."

Appellee made no new promise; he received no new consideration. The acts pleaded against him as a basis for estoppel did not have the effect in law of a new promise or a new consideration, nor did they have the effect of deceiving appellant to its injury. The amount secured by appellee on his application for aid was only slightly in excess of $300. Under no legal principle could that sum be construed a valuable consideration for a note for $6,312—a new consideration for a new note.

If we concede appellant's construction of the evidence, that R. M. Hubbard and appellee did not intend that the note in issue should be released, yet appellant cannot maintain this action. In Willis v. Morris, 63 Tex. 458, 51 Am.Rep. 655, it was

held that a creditor, perpetrating a fraud upon other creditors by obtaining a secret preference, could not recover on his claim. Quoting again from 5 R.C.L. 874: "A creditor guilty of a fraud on the other creditors in obtaining a secret preference cannot recover on a note or other contract for the balance of his original claim remaining after receiving payment under the composition."

The judgment of the lower court should in all things be affirmed, and it is so ordered.

Affirmed.