**COCA–COLA BOTTLING CO. OF FORT WORTH v. BURGESS.**

No. 14761.

Court of Civil Appeals of Texas.
Fort Worth.

May 24, 1946.

Rehearing Denied June 28, 1946.

Cantey, Hanger, McMahon, McKnight & Johnson, of Fort Worth, for appellant.

Callaway, Wade & Davis, of Fort Worth, for appellee.

SPEER, Justice.

Plaintiff T. J. Burgess sued defendant Coca-Cola Bottling Company, a corporation, for damages alleged to have been sustained by reason of a dead and partially decomposed mouse being present in a bottle of Coca-Cola manufactured by defendant, and procured by plaintiff, from which he drank a portion of the beverage before discovering the carcass of the rodent in the bottle.

The trial petition sets out a cause of action against defendant based upon the implied warranty by defendant to plaintiff and the public in general, that the contents of the bottle was clean, wholesome and fit for human consumption as a drink and as nourishment; that it was not contaminated but free from poisonous, deleterious and injurious substances. Allegations were made, in substance, that plaintiff drank from the bottle a portion of its contents and became sick and extremely nauseated which produced frequent spells of vomiting; that as a result of said drinking he suffered with nausea and an upset stomach for a year thereafter. There are no allegations of negligence by defendant. Since there are no criticisms of the pleadings, we need not set them out more fully. In so far as this appeal is concerned, defendant relied upon the general denial.

Trial was to a jury. At the conclusion of taking testimony, defendant moved for an instructed verdict, for reasons therein set out. The motion was overruled, and the ruling is the basis for assigned error. Special issues were submitted to and answered by the jury; the verdict was in all respects favorable to the plaintiff. Judgment for $500 was entered on the verdict, from which defendant has appealed.

Points of error one and two complain because the court refused to instruct a verdict for defendant. We shall first notice point two; it is in substance: that the court erred in refusing the peremptory instruction because the plaintiff failed to make out a case, in that no negligence by defendant was either pleaded or proved, especially so when the defendant assumed the burden of that issue and proved beyond a reasonable doubt that the mouse in question could not have gotten into the Coca-Cola bottle while in defendant's possession.

Plaintiff did not plead nor rely upon negligence for recovery in the case. His recovery depended upon an implied warranty by defendant that the beverage was good and wholesome for human consumption. If plaintiff established his case upon the theory upon which he thus relied, he was under no obligation to prove negligence by defendant, and the latter could not defeat liability by proving that it was not negligent. It is now the settled law in this state, that in an action pleaded as this one was "Liability * * * is not based on negligence, nor on a breach of the usual implied contractual warranty, but on the broad principle of public policy to protect human health and life." Jacob E. Decker & Sons, Inc., v. Capps, 139 Tex. 609, 164 S.W.2d 828, 829, 142 A.L.R. 1479.

First point of error complains because the court refused to give defendant's request for an instructed verdict based upon the contention that plaintiff had failed to

establish recoverable damages, in that there was no evidence of toxic poisoning and no evidence of "damage or harm to the physical structure of the plaintiff's body."

If we properly interpret defendant's contention under this point, it is in substance that the evidence conclusively shows that such physical pain and mental suffering as plaintiff sustained were not produced from drinking the contaminated beverage, but from having seen the dead and partially decomposed mouse in the bottle, after he had swallowed parts of its content, and therefore even the implied warranty of defendant that the beverage was good, clean and wholesome to drink, cannot be construed to mean what defendant had impliedly warranted the beverage to be good, clean and wholesome to look at.

If the exceptional niceties of the distinction sought to be drawn were all that were involved here we might go along with counsel. The effect upon the "physical structure" of one's body produced by the finer sensibilities of his emotions is not essentially different from that produced by fright and such things. Unaccompanied nor followed by bodily injury, the victim may not recover compensation for fright, or imaginary injuries when they do not exist. In support of these contentions defendant cites several cases, and could have cited many more. However the broad assertion of no liability in such circumstances is subject to many elements entering into the situation. The courts of this and other jurisdictions have for a century wrestled with the age-old proposition. The latest expressions may be found in Houston Electric Co. v. Dorsett, Tex.Sup., 194 S.W. 2d 546, 548, where Judge Sharp wrote well on the subject based upon the observation, "We are not here concerned with an action based merely on fright, neither accompanied nor followed by bodily injury."

Before discussing the testimony relied upon by defendant in support of its contention that it should have had an instructed verdict, we deem it appropriate to make some observations applicable to the duty of a trial court to give a summary instruction, when a jury trial has been demanded.

It is the recognized function of the jury to pass upon and determine the facts when the evidence is conflicting; it also determines the credibility of the witnesses and the weight to be given their testimony. It is equally well settled that a trial court should direct a verdict where the facts are well pleaded and are indisputably proved, leaving no issue for the jury. A verdict should be directed when there is no evidence to support the material issues (relied upon by the opposing party), when the jury can come to no other correct conclusion, when the evidence is all on one side, or whenever there is a pure question of law involved. 41 Tex.Jur. 935, 936, sec. 166. Unless these or some other recognized principles are involved, no peremptory instruction should be given. Some of the tests prescribed by our jurisprudence governing the question of instructed verdicts are:

To authorize the court to take the case from the jury or to instruct a verdict, the evidence must be of such a character that there is no room for ordinary minds to differ as to the conclusions to be drawn from it. 41 Tex.Jur. 939, secs. 169, 170; Lee v. International & G. N. Ry. Co., 89 Tex. 583, 36 S.W. 63. To hold that a peremptory charge should be given the court must find and believe that the evidence in the case "provided no reasonable basis for opposite conclusions by ordinary minds." Woods v. Townsend, Tex.Sup., 192 S.W.2d 884, 886. "If there is any material issue of fact arising from the evidence it must be submitted, and it is error to direct a verdict, the test of such issue being whether there is any probative evidence, which, considered by itself and accepted as true with inferences arising therefrom, would call for a finding of fact and a verdict accordingly." 41 Tex. Jur. 939 sec. 168. If there is any evidence of probative value it must be construed in the light most favorable to the adverse party and against the motion for an instructed verdict. 41 Tex.Jur. 941 sec. 170; City of Houston v. Chapman, 132 Tex. 443, 123 S.W.2d 652; McAfee v. Travis Gas Corp., 137 Tex. 314, 153 S.W.2d 442. "On motion to direct a verdict the court presumes to be true the evidence of the

opposite party, who is entitled to the most favorable construction that it will properly bear and to the benefit of all reasonable inferences arising therefrom. * * * All contradictory or countervailing evidence is left out of view." Burroughs v. Smith, Tex.Civ.App., 294 S.W. 948, 950, writ refused. The trial court should instruct a verdict only when all the testimony taken in the light most favorable to the losing party, would not support a judgment in his favor. Traders & Gen. Ins. Co. v. Scott, Tex.Civ.App., 189 S.W.2d 633, error refused, want of merit. In determining whether a trial court erred in giving a peremptory instruction for a verdict, the appellate courts must consider the testimony in the light most favorable to the losing party. "Conflicts in the testimony must be disregarded, and every intendment reasonably deducible from the evidence must be indulged in favor of such (losing) party and against the verdict." Anglin v. Cisco Mortg. Loan Co., 135 Tex. 188, 141 S.W.2d 935, 938.

The details of how plaintiff procured the bottle of Coca-Cola are not involved in the point under consideration, but that part about which we are concerned is fairly shown by paraphrasing questions and answers. Plaintiff testified substantially as follows: I attempted to drink a bottle of Coca-Cola; I turned it up and drank about a third of it, and it had a peculiar taste to it; I held the bottle up to the light and saw something in the bottle; a second examination to a better light revealed very definitely that it was a mouse—we could see "his teeth, his tail and four feet, and all his hair had slipped off and was floating around in the bottle—what I hadn't drunk." I could see the hair in the bottle very plainly. The effect on me right there immediately was "I 'urped', tried to get rid of it, I was afraid it was poison. I did not have too much trouble 'urping'. It may have been five or ten minutes after drinking the content before I 'urped'. Yes it made me sick, nauseated me. I called Dr. Crabb and he came immediately; the doctor gave me some medicine that night when he came; during the next two weeks I called on the doctor about four times for treatment and he gave me medicine; I didn't go to bed (from illness) during the next two weeks but didn't feel too well, had an upset stomach; I couldn't eat as I ordinarily did; would sit down to eat and have to get up and leave the food; I vomited three or four times the following week; I was on the road afterwards for eight months or a year and when I sat down to eat if I saw a bottle of Coca-Cola it would nauseate me and I would leave my meal and go to the next town and eat something; I attribute the three or four times that I vomited to the Coca-Cola. For about six weeks after I drank the Coca-Cola, I did not go about my business. I just hung around the house; I did go out on the road to attend to business some afterwards, but I closed out my business and entered the army. I estimate that I lost $500 a month during the six weeks that I could not attend to my business. A partially filled bottle of Coca-Cola was exhibited to the witness and he identified it as the bottle from which he drank; he said he could still see the dead mouse in the bottle.

On cross-examination, after repeating what he had said about drinking from the bottle, he was asked: "Q. Now you didn't immediately get sick there, did you? A. Well the thoughts of it immediately made me sick." Just the looks of the mouse made me sick; I didn't get sick until I saw the mouse because that was a matter of probably two or three minutes; the sight of the mouse sure did make me sick; I didn't get sicker and sicker for I didn't look at it too much; I just examined it to be sure what it was; yes, I sure got sick when I saw it was a mouse.

In all particulars save those brought out on cross-examination plaintiff was corroborated by the testimony of his wife, and Mr. and Mrs. Dietz, and by Dr. Crabb as to the treatment given by the doctor.

In response to issues, the jury found: (1) The bottle contained a mouse when it was delivered to the drug store (from which place it was procured). (2) Plaintiff suffered physical pain and mental anguish as a result of drinking from the bottle of Coca-Cola. (3) Plaintiff has suffered damage by reason of said physical pain and mental anguish. (4) Plaintiff's damage

for the physical pain and mental anguish suffered by him as a result of drinking from said bottle is the sum of $500. And (5) plaintiff's injury and damage was not the result of seeing the mouse in the bottle on the occasion in question.

Under the point now being considered, defendant argues that plaintiff admitted on cross-examination that it was the sight of the decomposed mouse that caused his nausea, pain and mental anguish and not the drinking of the beverage, and therefore no liability of defendant was shown. It will be observed that the jury, in response to special issue 5, found against defendant's contention. In view of all the testimony considered by the jury and the application of the rules herein above set out as to instructed verdicts, we are unwilling to override the jury's fact findings in this respect.

A dissertation on the psychological effect that the sight of the decomposed mouse in the bottle would have on one who had just consumed a portion of the beverage containing the hairs and any other parts of the carcass that may have been floating around in the bottle, to say nothing of the remaining portion of the mouse apparently preserved in the liquid, would be of little avail here. It is apparent that no other person of the many who saw the mouse became sick as did the plaintiff.

We think that when the testimony as a whole is considered in the light most favorable to plaintiff, as we must in this case, and giving it the "most favorable construction (against the proposed instructed verdict) that it will properly bear and giving to plaintiff the benefit of all reasonable inferences arising therefrom" and disregarding all evidence to the contrary, there is evidence in the case of sufficient probative value to support the jury findings on the identical issues contested by defendant. We think an issue of fact was raised by the testimony, and under the authorities above cited, we hold that no reversible error is shown by the trial court's refusal to instruct a verdict for defendant.

Point 3 assigns error because the court refused to define "Injury" for the guidance of the jury in answering inquiries as to physical pain and mental anguish.

No reversible error is presented by this point for more than one reason. The record discloses that the objection and exception to the court's charge in this respect reads: "Defendant objects and excepts to Special Issue No. 3 for the reason that there is no definition given herein of injury nor physical pain; whereas, inquiry should be made as to whether or not plaintiff received an injury and a definition of injury should be given that injury is damage or harm to the physical structure of the body."

It will be observed that the objection quoted concerns Special Issue No. 3. The word "injury" which defendant claims should have been defined is not to be found in the issue referred to at all. "It is never necessary to define or explain a term that is not used." 41 Tex.Jur. 1159, sec. 314. We note however that the word injury was used in the fifth Special Issue but no complaint is made of that issue in any form. The issue of which complaint is made did use the term "physical pain" but these are words of common use and have no special legal or technical meaning and require no definition or explanation to aid the jury to understand and "properly pass upon and render a verdict" on the issue mentioned. Such are the provisions of Rule 277, Texas Rules Civil Procedure.

There is yet another reason why no error is presented by point 3: The court did not in any way attempt to define or explain the words and terms "injury" and "physical pain"; and with such objection as was made by defendant, it is in no position to complain here, because it did not present to the court a substantially correct definition or explanatory instruction in writing and request its giving, as required by Rule 279, T.R.C.P. The quoted objection and exception by defendant did not amount to a compliance with the last-cited rule. It was no more than an objection because the court had not given such explanation and definition; it was not in any kind of form that the court could have properly submitted to the jury. If the

court had attempted to give explanations, etc., but they were objectionable to defendant, the form of his objections in this case would have been available to him under Rules 274 and 277, T.R.C.P. See Texas Employers' Ins. Ass'n v. Mallard, 143 Tex. 77, 182 S.W.2d 1000; Great American Indemnity Co. v. Sams, 142 Tex. 121, 176 S. W.2d 312.

Finding no reversible error under the points raised, they are overruled and the judgment of the trial court is here and now affirmed.