Guillermo Baez RIOS, Appellant,

v.

R. A. LOWENFIELD, d/b/a Madera Lumber
Company, Appellee.

No. 5127.

Court of Civil Appeals of Texas.

El Paso.

Jan. 4, 1956.

Rehearing Denied March 28, 1956.

 

Potash, Cameron, Potash & Bernat, El Paso, for appellant.

Edwards, Belk, Hunter & Kerr, El Paso, for appellee.

HAMILTON, Chief Justice.

Appellant Guillermo Baez Rios sued appellee R. A. Lowenfield, d/b/a Madera Lumber Company, on what he called a sworn account, in an effort to collect for four cars of Mexican common grade rough sawed lumber. Appellee Lowenfield answered that the four cars of lumber were not an isolated transaction, but part delivery on a contract between the parties whereby appellant contracted to sell and deliver to Lowenfield at El Paso, Texas, 400,000 board feet of select and moulding grade Mexican rough sawed lumber, and 400,000 feet of common lumber at stated prices, and to immediately ship out from Mexico the select and moulding grades before shipping out any of the common lumber. The shipment of the latter was to be spread out over a period of sixty days, and that no greater amount of No. 3 common lumber would be shipped than the select and moulding grade unless agreed upon later. The appellant Rios knew that Lowenfield did not want any of the common lumber, but agreed to take it in order to get the moulding grade and select which were the only grades used by him in his mill in El Paso, Texas, where it was fabricated and sold as a finished product at a profit. Lowenfield further alleged that Rios broke his contract by immediate shipment of a large quantity of the common lumber, while shipping only 112,848 board feet of combined select and moulding grades, leaving Rios in default to the extent of 287,152 board feet of select and moulding grades, which if it had been delivered would have been processed and sold by Lowenfield at a profit of $5\frac{1}{2}\cent$ per board foot, and that rough sawed lumber of the kind, size and quantity covered by the contract as applied to select and moulding grade was not available to Lowenfield from any other sources in El Paso, Texas, where there was no established market for such lumber. The case was submitted to the jury on special issues of which all of the material ones were answered in favor of appellee Lowenfield, for whom the court rendered judgment for $3,307.90, on his cross-action against appellant Rios, being damages of $15,793.36 suffered by Lowenfield by reason of appellant's breach of contract, less $12,485.46 unpaid by Lowenfield on the four cars of common lumber for which Rios originally brought suit. From this judgment appellant Rios has appealed.

Appellant presents three points of error, one of which is that appellant was entitled to an instructed verdict, since appellee failed to show any valid offset or counterclaim. In order for appellant to have been entitled to an instructed verdict the court would have had to find that cross-plaintiff Lowenfield failed to make out his case on his alleged cross-action, and in determining such matter Lowenfield was entitled to have the court place upon the testimony favorable to him the most liberal construction in his favor that the evidence would possibly bear, and was entitled to the benefit of all reasonable inferences arising from the evidence. Fort Worth & D. C. R. Co. v. Kiel, Tex.Civ.App., 195 S.W.2d 405, ¶ 1 and 2; Self v. Becker, Tex.Civ.App., 195 S.W.2d 701, ¶ 1 and 2; Coca Cola Bottling Co. of Fort Worth v. Burgess, Tex. Civ.App., 195 S.W.2d 379, ¶ 1 and 2. Lowenfield testified that if the 287,152 board feet of select and moulding grade lumber had been delivered to him he could have and would have processed same and sold the manufactured product for a profit of $5\frac{1}{2}\cent$ per board foot. He testified that he had unfilled orders for more products than he

could have processed out of said lumber on which appellee defaulted. We therefore sustain the trial court in its overruling appellant's motion for an instructed verdict.

■ The other two points of appellant pertain to damages. He says that in order to recover damages the amount must be certain in order that compensation alone can be awarded for breach of contract. We do not agree with appellant that the amount of damages must be proved to an exact certainty. While uncertainty as to the fact of legal damages is fatal to recovery, uncertainty as to the amount will not be. In the case of Southwest Battery Corp. v. Owen, 131 Tex. 423, 115 S.W.2d 1097, 1099, it is said by the Supreme Court:

"It is impossible to announce with exact certainty any rule measuring the profits the loss for which recovery may be had. The courts draw a distinction between uncertainty merely as to the amount and uncertainty *as to the fact of legal damages.* Cases may be cited which hold that uncertainty as to the fact of legal damages is fatal to recovery, but uncertainty as to the amount will not defeat recovery. A party who breaks his contract cannot escape liability because it is impossible to state or prove a perfect measure of damages." (Emphasis added.)

In arriving at the amount of profit lost by appellee Lowenfield, the jury had testimony of Lowenfield that from his experience, based on the cost of rough lumber, the cost of processing the lumber into the manufactured product and the amount for which he could sell such product, that the profit would be approximately 5½¢ per board foot. We think this is sufficient evidence upon which the jury could base its finding. We therefore overrule appellant's point that the damages proved were too uncertain.

■ The principal point upon which appellant bases his appeal is that

"when a person sues for damages for breach of contract he is entitled to re-

cover only the damages suffered. Compensation is the measure of damages."

Appellant contends that because appellee went ahead and filled certain orders that that had already been accepted by him at the time of the breach of the contract, by using surfaced or finished lumber, that appellee is only entitled to the difference between what it cost appellee to fill said orders and what it would have cost him to have filled said order if appellant had delivered the lumber according to contract. There is no testimony as to what such difference was. Appellant would be right in such contention had appellee brought his suit on that theory, but he did not. Appellee sued for loss of profits on additional orders that appellee could have and would have filled had the lumber been delivered to him. The trial court in trying the case was confined to the theory on which appellee had pled and proved his case, and the court would have been in error had it determined the damages on some other theory than that which was pled and proved. He chose to adopt as his measure of damages the amount of profit which he would have made on the lumber which appellant failed to deliver under the contract. Where seller knew buyer was to process the lumber and resell the products the buyer's loss of profits is a proper measure of damages. Southwest Battery Corp. v. Owen, supra; West Lumber Co. v. R. C. Cummings Export Co., Tex.Com.App., 228 S.W. 911. The fact that appellee did fill certain orders which he had already accepted by using other types of lumber does not change the situation, and whether he profited or lost by such operation is immaterial, considering the theory on which this case was brought. There was evidence that appellee received additional orders sufficient to take up all the undelivered material, and that appellee would have filled such additional orders had the lumber been delivered.

■■ It is true that it is incumbent upon one claiming damages for breach of contract to do what he reasonably can do to diminish his damages, and it may have been that Lowenfield should have filled other orders by using finished or surfaced lumber,

and he may have been negligent in not doing so. However, the burden of proof in this case rests upon appellant to prove that the appellee was negligent in not filling his unfilled orders by using other types of lumber. Belcher v. Missouri, K. & T. Ry. Co., 92 Tex. 593, 50 S.W. 559, 561, wherein the Supreme Court said:

"If the plaintiff showed negligence on the part of the defendant, he was prima facie entitled to recover all of the damages sustained, and the burden of proof rested upon the defendant to prove the negligence by which plaintiff enhanced the amount of the damage or failed to prevent the injury, as well as the extent to which such damages were enhanced, or to which they might have been lessened by the use of ordinary care on the part of the plaintiff."

In Meadolake Foods, Inc., v. Estes, 148 Tex. 13, 219 S.W.2d 441, the Supreme Court said:

"The jury found that the plaintiff below, who is respondent here, failed to use ordinary care to minimize the damages sustained by him, and that such failure was a proximate cause of a portion of the damages. No issues were submitted, and none were requested, seeking to ascertain the extent to which the damages were enhanced by reason of such negligence, or to which they might have been lessened by the use of ordinary care on the part of the plaintiff. The burden in that respect was upon the defendant, who is the petitioner here."

There was no pleading or proof that appellee was negligent in not procuring and processing other types of lumber and filling his other orders in an effort to cut down his damages.

Having overruled all of appellant's points, we affirm the judgment of the trial court.

On Appellant's Motion for Rehearing

 We have carefully considered appellant's motion for rehearing, and are of the opinion that same should be overruled. Appellant calls our attention to our original opinion wherein we spoke of "unfilled orders" which appellee had in sufficient amount to more than use up the 287,152 board feet of lumber which was not delivered. The appellee in testifying about the demand for products of the kind he was processing in his mill, used the terms "request for prices," "inquiries" and "orders" interchangeably. However, in checking the record we find that appellee did not, when using the term "order", actually mean a definite offer to buy at any particular price, and we are glad to correct our opinion in that respect. It does not, however, change the effect of our opinion. The jury found that had the 287,152 board feet of lumber been delivered the appellee would have in all reasonable probability processed such additional amount and sold it at a profit of $.055 per board foot. These findings of the jury were not based on a firm offer to buy at a particular price, and it was not necessary that they be. Appellee testified, based on many requests and inquiries he had from all over the United States, his knowledge of the market, his knowledge of the cost of production, that he could have and would have processed and sold the additional lumber at such a profit. The jury believed him.

Appellant still complains that appellee did not account for any profit that he made out of the orders he filled by using surfaced or finished lumber. First, there was no evidence that he made any profit out of the orders that were so filled. He testified that he filled the orders that he had already accepted in that manner without regard to cost, because he was forced to; that he could not make products out of that kind of lumber to advantage, and for that reason accepted no more orders. Second, regardless of the orders that appellant did fill, if he could have filled additional orders sufficient to use up the undelivered lumber he would be entitled to the profits therefrom as damages.

The motion for rehearing is overruled.