**TORTUGUERO LOGGING OPERATION, LIMITED, Appellant,**

**v.**

**Reagan HOUSTON, III, Independent Executor of the Estate of George W. Lyles, Deceased et al., Appellees.**

No. 13727.

Court of Civil Appeals of Texas.

San Antonio.

May 17, 1961.

Rehearing Denied Sept. 6, 1961.

Lieck & Lieck, San Antonio, for Tortuguero Logging Operation Ltd.

Carl Wright Johnson and William R. Simcock, San Antonio, for Reagan Houston, III, and others.

POPE, Justice.

Tortuguero Logging Operation, Ltd., sued George W. Lyles and John T. Barrow for breach of a contract to extract timber from certain Costa Rican lands. Reagan Houston, III, Independent Executor, was substituted as a party for Lyles, now deceased. Plaintiff obtained a judgment on a jury verdict for $14,874.97, and interest thereon, from November 15, 1948, in the sum of $10,098.08. Defendants have appealed and here urge that the trial court applied the wrong measure of damage, and also that the court improperly granted interest before judgment upon an unliquidated claim. Plaintiff, Tortuguero, appealed and urges that the trial court erred in holding that plaintiff had waived or settled a portion of its monetary claim.

The action grew out of some lumber operations in a remote jungle of Costa Rica. The Costa Rican government was the owner of standing timber near the Atlantic coast, but it granted certain concessions for the extraction of the timber. Upon extrac-

tion, the licensee was under a duty to pay the Costa Rican government. For a failure to extract timber, the government could cancel the license. The Carribbean Lumber Company, as licensee, assigned its concessions to Ricardo Ross, and he in turn transferred them to plaintiff, Tortuguero. By the assignment, Tortuguero was under no contractual duty to extract timber, but upon extraction was under a duty to pay its assignor $5 per thousand board feet.

On October 22, 1947, Tortuguero and defendants, Lyles and Barrow, entered into a written contract. By this contract Tortuguero made an exclusive assignment of the right to exploit Cedro Macho wood from the concessions, and Lyles and Barrow obligated themselves to extract the timber. The time, place, and method of measuring and grading Cedro Macho timber were stated in the contract. Lyles and Barrow also agreed to search for a market for timber other than Cedro Macho, but plaintiff, Tortuguero, asserted no claims for breach of that part of the contract. This case only concerns defendants' failure to extract Cedro Macho timber. Lyles and Barrow agreed to pay plaintiff, Tortuguero, as follows:

"Fourth: Barrow and Lyles will pay as the only and total payment for the wood produced and accepted for export the sum of eleven dollars, United States legal currency or its equivalent in colones for each one thousand board feet and consequently once the wood is cut shall be considered the property of said Messrs. Lyles and Barrow, they being obligated, of course, to make the measurement as specified and the corresponding payment."

Plaintiff, Tortuguero, grounded its case upon the claim that defendants failed to exercise diligence in extracting the timber. The record shows that defendants refused to agree upon a minimum quantity of timber they would extract, but did agree in their contract "to keep at least two of their winches working in the extraction of wood in the concessions to which this contract refers." The jury found, and the record well supports the finding, that defendants failed to extract the timber with diligence. In fact, the contract ran from October 22, 1947 to October 22, 1948, and for the period from March 20, 1948 to the end of the term, defendants failed to operate a single winch or to extract a single board foot of timber. During this time they had five winches in use elsewhere in the area.

The jury found that defendants failed to extract the timber with diligence, that with diligence they should have extracted 4,250,000 feet of Cedro Macho between October 22, 1947 and October 22, 1948; that plaintiff, Tortuguero, in accepting $1,450 from defendants on March 20, 1948, accepted it in full settlement of all amounts up to that time; that, thereafter, from March 20, 1948 to October 22, 1948, by the exercise of diligence, defendants should have extracted 2,479,162 board feet, and that there was Cedro Macho of the kind, character and quality specified in the contract, which could have been extracted at reasonable expense by the use of the winches owned by defendants.

Damages were arrived at by treating all claims up to March 20, 1948, as waived or settled, and by holding defendants liable for their failure to extract 2,479,162 board feet from that date to October 22, 1948. The court then allowed plaintiff its loss of profits on that number of board feet. For each 1,000 board feet which they should have extracted defendants, Lyles and Barrow, owed $11. But for each 1,000 board feet extracted plaintiff, Tortuguero, would owe its assignor $5, under its contract with the assignor. The net amount which Tortuguero would have earned would have been $6 for each 1,000 feet of Cedro Macho extracted, and the court arrived at its judgment by granting plaintiff judgment for its loss of profits computed at $6 per 1,000 board feet which defendants should have extracted after March 20, 1948. Both plaintiff and defend-

ants attack the measure of damages. In our opinion, loss of profits was the correct measure. Southwest Battery Corporation v. Owen, 131 Tex. 423, 115 S.W.2d 1097; Hughes v. Buchanan, Tex.Civ.App., 271 S.W. 158; Grand Prairie Gravel Co. v. Joe B. Wills Co., Tex.Civ.App., 188 S.W. 680, 686; W. H. Norris Lumber Co. v. Harris, Tex.Civ.App., 177 S.W. 515; 25 C.J.S. Damages § 43. The measure used by the trial court awarded to the plaintiff the amount it would have made if the contract had been performed. Plaintiff was not entitled to the gross amount provided in the contract. Porter & McMillan v. Burkett, Murphy & Burns, 65 Tex. 383; 13 Tex.Jur., Damages, § 103. Defendants objected to this measure of damages on the basis of the testimony of a Costa Rican lawyer who testified on cross-examination about the laws of that country. The question asked the legal expert was, " * * * if one agreed to buy a certain number of board feet of lumber, and if one breached such a contract, wouldn't the measure of damages be the difference between the contract price, less these deductions on account of defects of the timber * * * (and) less the reasonable value of the timber that he didn't take?" Plaintiff objected on the grounds that the questions did not fit the facts of the case. The witness answered that the value of the remaining timber should be deducted, but explained that the rule would not apply if "the right to the timber" was lost. Defendants claimed that though the plaintiff, Tortuguero, lost money, it still had the timber. The expert's testimony, as the trial court construed it, and as we construe it, was that Tortuguero in this case was unlike an owner of the timber who still had his timber. Tortuguero was at no time the owner of timber. It had a license subject to cancellation for the things which the jury found the defendants had failed to do. If Tortuguero should have mitigated its losses by entering into a new and different contract with other parties to preserve the value of its license, the burden was on defendants, not the plaintiff, to prove that fact and what the value was. Meadolake Foods,

Inc., v. Estes, 148 Tex. 13, 219 S.W.2d 441; Belcher v. Missouri, K. & T. R. Co., 92 Tex. 593, 50 S.W. 559, 561; Rios v. Lowenfield, Tex.Civ.App., 289 S.W.2d 332, 334; Jefferson & N. W. R. Co. v. Dreeson, 43 Tex.Civ.App. 282, 96 S.W. 63.

Defendants also urge that the court erred in awarding a judgment for pre-judgment interest in the sum of $10,-098.08. The objections, as preserved by the motion for new trial, are that the plaintiff failed to plead its right to interest, and also that there was no proof of the Costa Rican law with respect to interest. With respect to the latter objection, in the absence of pleading and proof, the law of another country is presumed to be the same as that of Texas. Pauska v. Daus, 31 Tex. 67; 1 McCormick and Ray, Texas Law of Evidence, § 99. On the interest matter, the trial court used that presumption. The trial court has also applied the rule announced by several cases approved by the Supreme Court, with respect to pre-judgment interest on recoveries for loss of profits. Interest upon unliquidated damages in an action for quantum meruit for services rendered has been approved. Settegast v. Timmins, Tex.Civ.App., 6 S.W.2d 425, 429. Interest upon pre-judgment loss of profits was approved in Ewing v. Wm. L. Foley, Inc., 115 Tex. 222, 280 S.W. 499, 44 A.L.R. 627. Interest for unliquidated damages arising out of a breach of contract was also allowed in Watkins v. Junker, 90 Tex. 584, 40 S.W. 11. These cases are reviewed and expressly approved by the Supreme Court in Texas Company v. State, 154 Tex. 494, 281 S.W.2d 83. In our opinion, plaintiff's pleadings prayed for pre-judgment interest.

Plaintiff, Tortuguero, complains because the court gave force to a receipt and letter by which it acknowledged full compliance with the contract up to March 20, 1948. From the evidence and findings, defendants failed to exercise diligence in extracting Cedro Macho, and from October 22, 1947 to March 20, 1948 it should have extracted

1,620,838 board feet more than were actually extracted. The facts are that defendants cut a small amount of timber during the period up to March 20, 1948, and paid plaintiff $1,450 after demands were made upon them by plaintiff. Upon receipt of the funds, plaintiff mailed a receipt and letter to defendants. Among other things, the receipt stated: "Acknowledgment of this payment recognizes full compliance of the existing contract to date." The covering letter had this statement from plaintiff: " * * * we consider the present payment satisfactory to us, but with the understanding that in the future, payment will be made every month end, accordingly to our contract of October 22nd last." Plaintiff argues that the letter evidenced a conditional settlement which was later breached. We regard the statement as a full settlement of past disputes, with a clear declaration that plaintiff would insist upon future strict compliance with the contract.

Plaintiff's more serious attack upon the partial settlement is that there was no consideration for the release, because the $1,450 was in payment to plaintiff of an admitted amount of timber which was cut, and which was not in dispute. Prior to the time the receipt was mailed, plaintiff was also complaining that defendants had breached the contract by a failure to perform with diligence. Plaintiff argues that defendants in paying the $1,450 were merely complying with the contract, and that compliance with a contract is no consideration for a partial release. In our opinion, there was consideration. Plaintiff accepted the $1,450 on terms which were new to the existing contract. The letter which plaintiff wrote transmitting the receipt to defendants added a new element to the contract. The letter required that defendants in the future should make their payments promptly; but added that in case the logs were not measured by the end of the month, the defendants should then pay "an estimated amount." The original contract imposed a duty upon defendants to "measure and pay," but not to "estimate and pay." There was consideration, however slight. Texarkana Nat. Bank v. Hubbard, Tex. Civ.App., 114 S.W.2d 389; Great American Indemnity Co. v. Blakey, Tex.Civ.App., 107 S.W.2d 1002; 12 Tex.Jur.2d, Compromise and Settlement, § 6.

The parties have numerous other points which we have considered and found to be without merit. The judgment is affirmed.

### On Motions for Rehearing.

Tortuguero Logging Operation, Ltd., objects to our statement in the opinion that it was under no contractual duty to Carribbean Lumber Company, its assignor, to extract timber. The point is urged in connection with Tortuguero's argument that it should recover $11 per thousand feet of lumber which should have been extracted. It complains because we deducted $5 per thousand feet which would have been its cost for timber which it extracted. We must remember that we are dealing with damages for uncut timber. Under the facts, Tortuguero is not and cannot be accountable to its assignor at the rate of $5 per thousand feet for uncut timber. The assignment from Caribbean to Tortuguero expressly provided that Carribbean may cancel the assignment for non-performance, but that "none of the parties will have any right to claim damages." It would have been a better statement if we had said that Carribbean could not recover damages from Tortuguero for breach of any contractual duty which Tortuguero might owe Carribbean. In any event, the proof shows that Tortuguero will not be liable in damages to Caribbean for uncut timber, and that the profit which Tortuguero would earn on timber extracted was $6 per thousand feet of lumber.

Tortuguero also urges our reconsideration of our holding that it accepted $1,450, from defendants on March 20, 1948, under circumstances which amounted to an accord and satisfaction of Tortuguero's claims up to that date. Upon reconsideration, we

grant that portion of the motion for rehearing. The jury found that defendants should have extracted 4,250,000 board feet of timber from October 22, 1947, to October 22, 1948. The undisputed evidence shows that up to March, 1948, only 150,000 board feet were extracted, and that there was never any dispute between the parties about the kind, quantity, or value of timber. Defendants paid and Tortuguero accepted the $1,450, and upon acceptance, it wrote defendants, "We have agreed that in consideration of the several inconveniences we have had, we consider the present payment satisfactory to us, but with the understanding that in the future payments will be made every month end, according to our contract of October 22nd last. In case that logs are not measured by the end of the month, an estimated amount will be paid." Thereafter, defendants did nothing. They did not respond to the letter nor perform under the contract. The jury found as a fact that Tortuguero accepted the $1,450 payment in full settlement of all amounts then due. Judgment was accordingly entered by the trial court that all disputes were adjusted up to March 20, 1948, and recovery was granted Tortuguero only upon the basis of timber which defendants should have diligently cut after March 20, 1948.

If the dispute up to March 20, 1948, was not settled, then the defendants are liable also for their lack of diligence in extracting timber from October 22, 1947, up to that date. The jury findings are that diligent efforts would have produced 1,770,838 board feet of timber, and the $1,450, was paid for that amount of timber. Diligent extraction would have produced an additional 1,620,838 board feet of Cedro Macho timber between October 22, 1947 and March 20, 1948. At $6 per thousand board feet, this would mean that Tortuguero lost $9,726, for lack of diligent extraction during that period.

■■■■ We conclude that there was no accord and satisfaction. When defendants paid Tortuguero the $1,450 they were doing exactly what their contract required them to do. They were paying the contract price agreed upon for the kind and quantity of timber extracted. There was never any dispute about the amount owing on this contractual obligation. Defendants merely paid what they were legally bound to pay. There was, therefore, no consideration for an accord or settlement of defendants' breach of the other obligations of the contract, such as that which required diligent extraction of timber. American National Ins. Co. v. Teague, Tex.Com.App., 237 S.W. 248; Jones v. Risley, 91 Tex. 1, 32 S.W. 1027; Buchanan & Carvel v. Etie, Tex.Civ.App., 191 S.W.2d 706; Woodmen of the World Ins. Soc. v. Armstrong, Tex. Civ.App., 170 S.W.2d 526; Woodmen of the World Ins. Soc. v. Brown, Tex.Civ. App., 164 S.W.2d 190; Chicago Fraternal Life Ins. Ass'n v. Herring, Tex.Civ.App., 104 S.W.2d 901, 903. When a claim is based upon a liquidated demand and the amount due is definite and certain, payment and acceptance of less than the entire sum due, in the absence of some new consideration does not bar recovery of the balance due, and a receipt or release in full of the balance due is without consideration. First Texas Prudential Ins. Co. v. Connor, Tex. Civ.App., 209 S.W. 417. Accord, Fidelity & Casualty Ins. Co. of New York v. Mountcastle, Tex.Civ.App., 200 S.W. 862; Boerger v. Vandegrift, Tex.Civ.App., 188 S.W. 948.

We were in error in stating in the opinion that there was a new consideration by reason of Tortuguero's letter which imposed a new duty to estimate the amount of timber cut when it was not actually measured. We have searched in vain, and find no proof that defendants ever expressly or impliedly agreed to or accepted that new obligation. Simms Oil Co. v. American Refining Co., Tex.Com.App., 288 S.W. 163. Following Tortuguero's letter stating that new duty, there is total silence in the record. There was no agreement by which the only possible new consideration might have arisen.

We accordingly grant Tortuguero's motion for rehearing in part and adjudge defendants liable for failure to extract 4,-250,000 board feet at $6, per thousand feet, less $1,450, which defendants paid. Tortuguero is also entitled to recover prejudgment interest. Defendants' motion for rehearing is overruled. Costs are adjudged against defendants.